# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: ) | |
| ) | Case No. 12-09130 |
| **College Book Rental Company, LLC,** ) | |
| ) | **Chapter 11** |
| Debtor. ) | **Judge Harrison** |
| ) | |

Deadline for Filing Responses: 4/11/13

Hearing: 4/16/13, 9:00 a.m., Courtroom 3, U.S. Bankruptcy Court, Customs House, 701 Broadway, Nashville, TN

## OBJECTION TO MOTION TO APPROVE PROCEDURES FOR THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

Unsecured creditors the McGraw-Hill Companies, Inc., Pearson Education, Inc., Cengage Learning, Inc., Elsevier, LTD and John Wiley & Sons, Inc. (collectively, "Publishers") respectfully submit this objection to the Trustee's motion to approve procedures for the sale of essentially all of Debtor's assets.[1]

The Publishers filing this objection are among some of the most storied businesses in the United States that collectively account for a substantial portion of the United States higher education textbook marketplace. While individually, each company has a rich history of furthering business and education in this country, collectively, they represent a significant voice on issues impacting the textbook industry. While fierce competitors on business issues, they stand together in fighting piracy that undermines their businesses.

---

[1] (*See* "Motion to (1) Approve Procedures for the Sale of Certain Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests; (2) Authorizing the Assumption, Assignment and Sale of Certain Executory Contracts; and (3) Rejecting Certain Executory Contracts and Unexpired Leases; and (4) Granting Related Relief" (DE # 122) (the "Motion")).

Publishers are the victim of a massive, complex and shocking counterfeiting scheme by Debtor and its principals, Chuck Jones and David Griffin. Publishers object to the Motion for three independent reasons.

First, there is no business justification for the sale of essentially all of Debtors' assets. The only reason offered for the sale is that Mr. Griffin and his entity (CBR Funding) will not consent to the Trustee's continued use of cash collateral. The business is apparently profitable and sound, and could be operated for the benefit of all creditors, including unsecured creditors, absent Mr. Griffin's objection to the Trustee's use of cash collateral. In such circumstances, there is no sound business purpose that justifies the sale of substantially all of Debtor's assets to Mr. Griffin.

Second, if the Court is nonetheless inclined to approve a sale, such sale should not be free and clear of Publishers' claims.

Third, any sale to Mr. Griffin or his entity should not be approved because he has not acted in good faith and any sale to Mr. Griffin or his entity would contravene public policy.

## I.     FACTS

**A.     The Counterfeiting Scheme**

1)     On September 20, 2012, McGraw-Hill and Pearson Education, Inc. filed suit against a large group of defendants for running what was in essence a massive, illegal Chop Shop operation that produced counterfeit copies of textbooks. The defendants included CBR, SEB, and Jones, among many others, asserting claims for, inter alia, copyright and trademark infringement.[2]

---

[2] *See McGraw-Hill Companies, Inc. v. Jones*, No. 1:12-cv-07085 in the United States District Court for the Southern District of New York (Judge Nathan).

2) The Complaint also named a number of Doe Defendants, recognizing that Plaintiffs were not aware of everyone who should be named.

3) With the filing, Plaintiffs sought a Temporary Restraining Order to halt both the Chop Shop operation and the distribution of counterfeit books created at the Chop Shop. The plaintiffs also sought expedited discovery to identify others who were involved in the counterfeiting operation.

4) On September 28, 2012, Judge Nathan entered a Temporary Restraining Order to halt the counterfeiting, and granted Plaintiffs the right to pursue expedited discovery. The TRO was converted into a Preliminary Injunction on October 26, 2012.

5) Thereafter, many of the defendants in the case settled the publishers' claims against them for their role in the Chop Shop. Among those who settled was Mr. Jones.

6) In response to the Publishers suit, on October 4, 2012, CBR was placed into involuntary bankruptcy by Mr. Griffin and others.

7) Mr. Griffin who knew about the Chop Shop operation and funded it, chose not to settle.

8) On February 22, 2012, Publishers amended their Complaint to assert claims against Mr. Griffin. That litigation is ongoing.

**B.  The Bankruptcy Case**

9) On October 19, 2012, Robert H. Waldschmidt was appointed as the Chapter 11 Trustee.[3]

10) Publishers have filed unsecured claims for millions of dollars in the bankruptcy case based on the counterfeiting scheme described above.

---

[3] (*See* Motion ¶ 3).

11) Since his appointment, the Trustee has been operating the business of the Debtor.[4]

12) Debtor had net income of $519,629.40 in January 2013, and a net loss of $199,423.31 in February 2013.[5] Based on the monthly operating reports, Debtor has a viable business.

## C. Proposed Sale

13) The Trustee's Sale Motion is not brought about by any problem with the business.

14) Rather, as the Trustee states, the Sale Motion is only brought about because an entity wholly owned by Mr. Griffin acquired the position of the senior secured lender and refused to consent to the Trustee's continued use of cash collateral: "The Trustee's Motion was contested by CBR Funding (which had acquired the secured position of Security Bank) which, in essence, demanded that the assets of the bankruptcy estate be liquidated as soon as possible, as a condition for any further use of cash collateral.")

15) Mr. Griffin is the sole member of CBR Funding.

16) The proposed sale is for "essentially all assets of the Debtor."[6]

17) "CBR Funding has proposed to buy the Purchased Assets for approximately $3,400,000, consisting of (i) $3,000,000 in the form of a credit bid; and (2) the assumption of certain ordinary course of business liabilities (less than 90 days old) in an amount not to exceed $400,000."[7]

18) Under CBR Funding's proposal, unsecured creditors such as Publishers, who were the victims of the Chop Shop operation, would receive no dividend.

---

[4] (*See* Motion ¶ 5).
[5] (*See* DE # 164, p. 23 of 23).
[6] (*See* Motion ¶ 12).
[7] (*See* Motion ¶ 12).

## II. ARGUMENT

### A. There is no business justification for the sale of essentially all of debtor's assets

19) The Sixth Circuit has adopted the Second Circuit's standard in the *Lionel* case for approving a sale of substantially all of the Debtor's assets.[8]

20) In Lionel, the Second Circuit explained that "there must be some articulated business justification, *other than appeasement of major creditors*, for using, selling or leasing property out of the ordinary course of business before the bankruptcy judge may order such disposition under section 363(b)."[9]

21) The Second Circuit explained that it is an abuse of discretion to depart from the normal Chapter 11 process simply because one creditor constituency demands a sale: "The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application. *In this case the only reason advanced for granting the request to sell Lionel's 82 percent stock interest in Dale was the Creditors' Committee's insistence on it. Such is insufficient as a matter of fact because it is not a sound business reason and insufficient as a matter of law because it ignores the equity interests required to be weighed and considered under Chapter 11.*"[10]

22) The *Lionel* court explained that "[i]n fashioning its findings, a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather, he should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look

---

[8] *See Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 390 (6th Cir. 1986) ("We adopt the Second Circuit's reasoning in *In re Lionel Corporation*, supra, and conclude that a bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action.").
[9] *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983) (emphasis added).
[10] *Lionel,* 722 F.2d at 1071.

to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge."[11]

23) Here, the only reason for the sale is the appeasement of a major creditor controlled by Debtor's insider, Mr. Griffin. Mr. Griffin's wholly owned entity—CBR Funding—has "demanded that the assets of the bankruptcy estate be liquidated as soon as possible, as a condition for any further use of cash collateral."[12]

24) The insistence of an entity controlled by an insider that a liquidation occur is an insufficient reason to depart from the normal Chapter 11 process.

25) Moreover, the proposed sale procedure is highly unlikely to yield any benefit to an important constituency—unsecured creditors. The proposed bid by Mr. Griffin's entity is highly likely to be the successful bid under this process. Under Mr. Griffin's proposed bid, he will not pay anything to unsecured creditors.

26) The Motion states that the sale is necessary "to prevent the closure of the business if he cannot continue to use cash collateral."[13]

---

[11] *Id.* at 1071.
[12] (Motion ¶ 11).
[13] (Motion ¶ 14).

27) The only reason the Trustee cannot continue to use cash collateral is Mr. Griffin's refusal to consent to the Trustee's continued use. Mr. Griffin entirely created the emergency here.

28) It is not clear why Mr. Griffin's refusal to consent should carry the day—the Court can order the continued use of cash collateral over Mr. Griffin's objection.

29) From the unsecured creditors' perspective, it is not clear how the § 363 sale process is any better than closure of the business.

30) Thus, considering all of the diverse interests in the Estate—as opposed to just Mr. Griffin's interests—the Motion should be denied.

**B.    Any sale to CBR Funding should not be free and clear of Publishers' claims**

31) As was shown above, there is no business justification for a sale other than Mr. Griffin's demand (which is insufficient).

32) But, to the extent the Court is inclined to approve a sale to CBR Funding, such sale should not be free and clear of any claims that Publishers have against CBR Funding, including successor liability claims.

33) The Motion requests that the Court approve the sale of the assets "free and clear of all liens, claims, encumbrances and other interests pursuant [to] Sections 363(b), (f) and (m) of the Bankruptcy Code . . ."[14]

34) Section 363(f), however, does not provide that assets may be sold free and clear of unsecured claims.

35) Section 363(f) only provides that assets may be sold "free and clear of any *interest* in such property . . ."[15]

---

[14] (*See* Motion ¶ 13).

36) An unsecured claim is not an "interest" under § 363(f).[16]

37) Even if Publishers' claims against CBR Funding are "interests" under § 363(f), none of the conditions for a sale pursuant to § 363(f)(1) through (5) have been met.[17]

## C. Mr. Griffin has not acted in good faith

38) Mr. Griffin is required to show that any sale to him would be in good faith.[18]

39) Mr. Griffin has not acted in good faith for two primary reasons:

40) First, as Publishers allege in their complaint against him, he participated in a massive counterfeiting scheme. It would be contrary to public policy to allow him the opportunity, through the bankruptcy court, to obtain assets that would allow him to continue the scheme. Providing Mr. Griffin with the assets of CBR, a book rental company, would essentially be turning the henhouse over to the fox.

---

[15] 11 U.S.C. § 363(f) (emphasis added).

[16] *C.f., In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 at fn. 23 (6th Cir. 1991) ("The Bankruptcy Code does not define the word 'interest.' However, *White Motor*, which Wolverine cites in arguing that the court has jurisdiction over this matter, appears to reject Wolverine's argument that general unsecured interests fall within the scope of those interests that can be discharged pursuant to section 363(f): 'This section authorizes sales free and clear of specific interests in the property being sold; liens for example. General unsecured claimants including tort claimants, have no specific interest in a debtor's property. Therefore, section 363 is inapplicable for sales free and clear of such claims.'") (*citing In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987)).

[17] *C.f., Wolverine*, 930 F.2d at 1147, fn. 24 ("Even if we were to assume that unemployment contribution rates fall within the general meaning of 'interest' in section 363, the conditions for a sale pursuant to section 363(f) appear not to have been met. Although the language of section 363(f) is in the disjunctive and the sale free and clear of the interest concerned can occur if any one of the conditions of section 363(f) have been met, 2 Collier on Bankruptcy ¶ 363.07, not one of the conditions is met in this case.").

[18] *In re Revco D.S., Inc.*, 901 F.2d 1359, 1366 (6th Cir. 1990) ("We do not decide here whether the burden on the good faith issue rests upon NYLIC or upon the Banks. In a case somewhat analogous to this, although involving use of the expression "in good faith" in bankruptcy code § 363(m), the court held that the bankruptcy court must make an explicit finding on this question despite appellants' failure to seek a stay in challenging the order. In re Abbotts' Dairies of Pennsylvania, Inc., 788 F.2d 143, 148–49 (3d Cir.1986). We, therefore, hold that an implicit finding of "good faith" in a § 364(e) context is insufficient and that "good faith" under that section should not be presumed.").

41) Second, Mr. Griffin has not acted in good faith by creating the emergency that required the Trustee to file this motion. There is no justification in the company's performance under the Trustee for objecting to the Trustee's continued use of cash collateral.

### III. CONCLUSION

42) Therefore, Publishers respectfully request that the Court deny the Motion because Mr. Griffin's demand that the assets be sold is not a legitimate business justification.

43) To the extent the Court is nonetheless inclined to approve the sale procedure motion, the request that the sale be free and clear of unsecured claims is contrary to the plain language of § 363(f) and Sixth Circuit precedent. Therefore, Publishers' request that any sale be free and clear of any "interest," but not unsecured claims.

44) Finally, Mr. Griffin and CBR Funding have not acted in good faith, and Publishers request that the Court not make any finding of good faith by them. In the alternative, Publishers request that the Court defer any finding of good faith until Publishers' lawsuit against Mr. Griffin is resolved.

April 9, 2013　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Michael G. Abelow*
　　　　　　　　　　　　　　　　　　　　　　Michael G. Abelow (No. 26710)
　　　　　　　　　　　　　　　　　　　　　　SHERRARD & ROE, PLC
　　　　　　　　　　　　　　　　　　　　　　150 Third Avenue North, Suite 1100
　　　　　　　　　　　　　　　　　　　　　　Nashville, Tennessee 37201
　　　　　　　　　　　　　　　　　　　　　　(615) 742-4200

　　　　　　　　　　　　　　　　　　　　　　*Attorney for The McGraw-Hill Companies, Inc., Pearson Education, Inc., Cengage Learning, Inc., Elsevier, LTD and John Wiley & Sons, Inc.*

## CERTIFICATE OF SERVICE

I certify that, on April 9, 2013 the foregoing was served electronically through the Court's ECF system upon all Filing Users accepting Notice of Electronic Filing and upon the Chapter 11 Trustee by mail and email to Robert H. Waldschmidt, 300 James Robertson Parkway, Nashville, TN 37201; rhwaldschmidt@aol.com.

*/s/ Michael G. Abelow*
Michael G. Abelow