## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:                  )
                        )

**COLLEGE BOOK RENTAL**    )     Case No. **12-09130-MH3-11**
**COMPANY, LLC**          )
                        )

       Debtor        )

**ORDER (1) APPROVING PROCEDURES FOR THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (2) AUTHORIZING THE ASSUMPTION, ASSIGNMENT, AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (3) REJECTING CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (4) SETTING A HEARING TO CONSIDER THE APPROVAL OF THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS AND (5) GRANTING RELATED RELIEF**

Upon the Trustee's Motion (1) To Approve Procedures for the Sale of Certain Assets of the Bankruptcy Estate, Free and Clear of all Liens, Claims, Encumbrances, and other Interests, (2) Authorizing the Assumption, Assignment, and Sale of Certain Executory Contracts and Unexpired Leased, (3) Rejecting Certain Executory Contracts and Unexpired Leases and (4) Granting Related Relief, dated January 31, 2013, as supplemented by the "Supplement to Trustee's Motion to Approve Sale Procedures for the Sale of Certain Assets and Motion to Continue Hearing to Approve Sale Procedures and to Set Hearing to Approve the Sale of Certain Assets of the Debtor Free and Clear of All Liens, Claims, Encumbrances and Other Interests" dated April 15, 2013 (collectively, the "**Motion**"), seeking, among other things, the entry of an order (the "**Sale Procedures Order**") (a) authorizing and approving certain bidding procedures (the "**Bidding Procedures**"), (b) approving the manner and form of notice of the auction (the

"**Auction**") for the sale of the Purchased Assets, (c) establishing procedures related to the assumption and assignment of certain executory contracts and unexpired leases, including notice of proposed cure amounts, and (d) scheduling a hearing to consider the sale of certain of the Debtor's assets, other than Excluded Assets, free and clear of all liens, claims, encumbrances and other interests (the "**Sale Hearing**"); and it appearing that the relief requested is in the best interest of the Debtor's estate; notice of the Motion and opportunity for hearing on the Motion was appropriate and no other or further notice need be given; and, upon the statements of counsel, and any testimony or offer of proof as to testimony that may have been presented at the hearing; and after due deliberation and sufficient cause appearing therefore; it is hereby

## IT IS FOUND AND DETERMINED THAT:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014;

B.     The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§157 and 1334. The relief requested in the Motion is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

C.     Under the circumstances, due, proper, requisite and sufficient notice of the Motion was provided, and no other or further notice need be provided, except as set forth herein with respect to the Bidding Procedures, Auction and Sale Hearing;

D.     A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to all interested parties and entities;

E.     The Bidding Procedures substantially in the form annexed hereto as Exhibit B are fair, reasonable and appropriate, reflect the Trustee's exercise of prudent business judgment consistent with fiduciary duties and are designed to maximize the value of the Debtor's estate;

F.     Trustee's proposed (i) Notice of Possible Assumption, Sale and Assignment of Certain Unexpired Leases of Real Property and Executory Contracts (the "**Assignment Notice**") and (ii) Notice of the Bidding Procedures, Auction and Sale Hearing (the "**Notice of Auction**") – are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the assumption and assignment of applicable executory contracts and unexpired leases of real property, the Sale Hearing and the Bidding Procedures to be employed in connection therewith, and complies with all applicable provisions of the Bankruptcy Code , the Bankruptcy Rules and Local Bankruptcy Rules for the Middle District of Tennessee;

G.     The notice to be provided to all of the Debtor's known creditors pursuant to this Order is sufficient and no further notice with respect to the Motion, Bidding Procedures, Auction or Sale Hearing is required;

H.     The entry of this Order is in the best interests of the Debtor, its estate, its creditors and interest holders, and all other parties in interest in this chapter 11 case;

I.     The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Purchased Assets (as defined in the Purchase Agreement); and it is therefore

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is granted.

2.     Any and all objections and reservations of rights are hereby overruled.

3.     The findings of fact set forth above and the conclusions of law stated herein shall constitute the Court's findings of facts and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this matter pursuant to Bankruptcy Rule 9014. To the extent that any finding of fact shall be later determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

## The Purchase Agreement

4.     CBR Funding, LLC (the "**Purchaser**") and Trustee, on behalf of the Debtor's estate, have tentatively agreed to the Asset Purchase Agreement for the sale of the Purchased Assets (the "**Purchase Agreement**"), subject to approval of this Court.  A true and correct copy of the Purchase Agreement is attached to hereto as <u>Exhibit A</u> and incorporated herein by reference.  The Purchase Agreement will be subject to higher and better offers received by the Trustee at the Auction in accordance with the terms of this Order.

## The Bidding Procedures

5.     The Bidding Procedures, in substantially the form attached hereto as <u>Exhibit B</u> are hereby incorporated by reference in this Order as if fully set forth herein and are hereby approved and the Trustee on behalf of the Debtor is authorized to take such actions as may be necessary to implement the Bidding Procedures.

6.     The Notice of Auction attached hereto as <u>Exhibit C</u> is hereby approved.

7.     The Assignment Notice attached hereto as <u>Exhibit D</u> is hereby approved.

8.     If the Trustee receives one or more Competing Bids on or before May 28, 2013 in accordance with the Bidding Procedures, the Trustee shall conduct the Auction of the Purchased Assets at 10:00 a.m. (prevailing Central time) on June 3, 2013 (the "**Auction Date**")

at the Trustee's office located at 7003 Chadwick Drive, Suite 211, Brentwood, Tennessee, or at such later time or at such other place as the Trustee shall determine in accordance with the Bidding Procedures.

9.     No later than three (3) days after the entry of this Order, the Trustee shall cause the Notice of Auction substantially in the form attached as <u>Exhibit C</u> hereto to be served, via first class mail, upon all other known creditors of the Debtor (as listed in the matrix attached to the Trustee's motion) and all potential purchasers (as listed in the trustee's motion) and further upon any additional purchasers brought to the trustee's attention by any party in interest on or before May 8, 2013. The Trustee shall further serve the Assignment Notice on the non-debtor parties to an applicable unexpired lease of real property or executory contract that the Trustee may seek to assume and assign to the Purchaser pursuant to the provisions set forth herein (the "**Potential Assumed Leases or Contracts**").

10.     The Trustee asserts that there is no Cure Amount due or payable on any existing executor contracts. Unless the non-debtor party to Lease and/or Contract files with the Court and serves an objection (the "**Cure Amount Objection**"), on or before 4:00 p.m. (prevailing Central time) on May 27, 2013, so as to be received no later than 4:00 p.m. on the same day, such non-debtor party shall (i) forever be barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Lease and/or Contract and the Trustee shall be entitled to rely solely upon the Cure Amount, and (b) be forever barred and stopped from asserting or claiming against the Debtor, the Successful Bidder at the Auction and/or the purchaser of the Purchased Assets or any other assignee of the Leases and Contracts that any additional amounts are due and any defaults exist or that any conditions to assumption and assignment must be satisfied under such Lease and Contracts.

11. In the event a Cure Amount Objection is timely filed, the Cure Amount Objection must set forth (i) the basis for the objection, and (ii) the amount the party asserts as the Cure Amount. After receipt of the Cure Amount Objection, the Trustee will attempt to reconcile any differences in the Cure Amount believed by the non-debtor party to exist. In the event, however, the Trustee and non-debtor party cannot consensually resolve the Cure Amount Objection and such dispute must be resolved, Purchaser will segregate and deposit funds with the Trustee in amounts and to the extent of any disputed cure amounts pending the resolution of any such disputes by this Court or mutual agreement of the parties. Hearings on Cure Amount Objections may be held (a) at the Sale Hearing or (b) on such other date as this Court may designate with the prior written consent of Purchaser.

12. Notwithstanding anything contained herein, Purchaser shall have until April 30, 2013 (the "**Designation Date**") to designate certain **Potential Assumed Leases and Contracts** to be assigned to Purchaser under the Purchase Agreement (the "**Purchased Contracts**").

13. Subject to any required Cure Amount payments by the Trustee on behalf of the Debtor, the assignee of any Purchased Contract will not be subject to any liability to the counterparty to the Purchased Contract that accrued or arose before the closing date of the proposed sale of the Purchased Assets, except as provided in the Purchase Agreement.

14. Following the Designation Date, Purchaser shall have the right to designate any Purchased Contract as an Excluded Asset upon the determination of the Trustee or the Court of the Cure Amount for such Purchased Contract in which case such Lease or Contract shall be deemed to be rejected by the Trustee.

15. Objections if any to the relief requested in the Motion for the entry of an order (a) authorizing the sale of the Purchased Assets assets free and clear of all liens, claims, encumbrances and other interests, (b) authorizing and approving the purchase agreements with respect thereto, (c) authorizing and approving the assumption and assignment of certain Potential Assumed Leases or Contracts in connection with the sale, and granting related relief (such aspects of the Motion referred to as the "**Sale Motion**") must be: (a) in writing, (b) comply with the Bankruptcy Rules, (c) be filed with the clerk of the Bankruptcy Court for the Middle District of Tennessee, U.S. Customs House, 701 Broadway, Nashville, Tennessee, 37203 on or before **June 7, 2013 at 4:00 p.m.** (prevailing Central time) and (d) be served so as to be received no later than 4:00 p.m. (prevailing Central time) on the same day, upon the notice parties identified above in Paragraph 9 above. The Sale Hearing, on the approval of the Sale Motion, shall be held on and is hereby scheduled for **June 11, 2013 at 9:00 a.m.** (prevailing Central time) in Courtroom Three, U.S. Customs House, Nashville, Tennessee.

16. The Trustee, subject to the consent of the Purchaser not to be unreasonably withheld, reserves the right to amend any deadline set forth herein (including, the deadlines set forth in the exhibits attached hereto) without further Court approval; provided, however, that no such amendment will provide any interested party with less notice than provided by such deadlines as currently set forth herein; provided, further, that the Trustee shall file a notice detailing any such changes with this Court and serve such notice in accordance with the local rules, including service upon any interested bidders.

17. Any person or entity submitting a Competing Bid shall confirm that it/he/she has not engaged in collusion with respect to the bidding or sale of the Purchased Assets.

18.     The failure specifically to include or reference any particular provision, section or article of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such procedures, it being the intent of the Court that the Bidding Procedures be authorized and approved in their entirety.

19.     This Order shall be binding upon and inure to the benefit of the Successful Bidder and its affiliates, successors and assigns, and the Debtor, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estate of the Debtor, including the Trustee, whether in this chapter 11 case or a subsequent bankruptcy case or upon dismissal of this case.

20.     As provided by Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after the entry thereof and shall be effective and enforceable immediately upon entry on this Court's docket.

21.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT:**

22.     Trustee shall set aside and specifically hold in escrow the sum of $873,167.00, which is the proposed payment for the allowed first priority secured claim of Baker & Taylor, Inc. ("**B&T**") in the assets being sold; the Trustee shall pay said funds to B&T at the closing of a sale in accordance with this Order.

***This order was signed and entered electronically as indicated at the top of the first page.***

APPROVED FOR ENTRY:

*/s/ Robert H. Waldschmidt*
ROBERT H. WALDSCHMIDT (#4657)

Attorney for Trustee
7003 Chadwick Drive, Suite 211
P.O. Box 2828
Brentwood, TN 37024-2828
615/468-1020    Fax: 615-259-2179
rhw@rhwlawoffice.com

**ASSET PURCHASE AGREEMENT**

This **ASSET PURCHASE AGREEMENT** (this "Agreement") dated _____, 2013 (the "Effective Date") is made by and between The Bankruptcy Estate of College Book Rental Company, LLC, Case No. 12-09130-MH3-11 (the "Seller"), by and through Robert H. Waldschmidt, 7003 Chadwick Drive, Brentwood, TN 37024-2828, as Chapter 11 trustee of the Seller (the "Trustee") and CBR Funding, LLC, a Tennessee limited liability company with an address of 604 Cherry Street, Helena, AR 72342 (the "Purchaser").

**RECITALS**

A.      On October 4, 2012 an involuntary petition was filed against College Book Rental Company, LLC under Chapter 11 of Title 11, U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court"), Case No. 12-09130-MH3-11 (the "Bankruptcy Case"). An Agreed Order for Relief was entered on October 15, 2012 (the "Petition Date") and pursuant to an order of the Bankruptcy Court entered on October 19, 2012, the Trustee was appointed.

B.      Purchaser asserts a lien on substantially all of the assets of Seller as a result of (i) a security interest in certain assets which secures debt owed by Seller to Security Bank & Trust Company ("Security Bank"), in the approximate amount of $7,566,203 (the "Security Bank Claim"), which debt was recently acquired by Purchaser, (ii) a replacement lien in certain assets securing the use of Security Bank's cash collateral granted to Security Bank pursuant to the Final DIP Order (as hereafter defined) and (ii) a security interest granted in connection with a post-petition loan (the "DIP Loan") extended to Seller by Purchaser in the amount of $995,000 under a "Final Order (A) Authorizing Debtor to Obtain Post-Petition financing and Incur Post-Petition Indebtedness, (B) Granting Liens and Super Priority Administrative Expense Status pursuant to §§ 105, 363 and 364 of the Bankruptcy Code and (C) Permitting Use of Cash Collateral (the "Final DIP Order") which security interest is subordinate to the security interests of Security Bank and Baker & Taylor, Inc. ("B&T") and subject to the Carve Out (as defined in the Final DIP Order).

C.      B&T has asserted in its proof of claim that Seller owes B&T $19,178,012 in respect of books and other inventory sold by B&T to Seller and asserts that its claim (the "B&T Secured Claim") is secured by (i) a first lien on certain of Seller's assets and the proceeds thereof resulting from a purchase money security interest for books sold to Seller by B&T (the "B&T First Priority Secured Claim"), (ii) a security interest in, among other things, all other inventory and accounts receivable of the Seller arising from all other inventory purchased by Seller from B&T and the proceeds thereof, which security interest is subordinate only to the security interest of Security Bank in such collateral; and (iii) a replacement lien and security interest in substantially all assets of Seller (including general intangibles) securing the use of B&T's cash collateral granted to B&T pursuant to the Final DIP Order.

D.      Pursuant to Sections 363 and 365 of the Bankruptcy Code, Seller desires to sell, transfer, assign, convey and deliver to Purchaser, and Purchaser desires to purchase, accept and acquire from Seller all of the Purchased Assets (as hereinafter defined) and assume and thereafter pay or perform as and when due, or otherwise discharge, all of the Assumed Liabilities (as hereinafter defined), in accordance with the terms and subject to the conditions set forth in this

Agreement, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

E.      The Purchased Assets are assets of the Seller, which are to be purchased and assumed by the Purchaser free and clear of all liens, claims and encumbrances, except as otherwise provided herein, pursuant to a final, non-appealable order of the Bankruptcy Court approving such sale, which order will include the authorization for the assumption by the Seller and assignment to the Purchaser of the Assumed Contracts (defined herein) under Section 365 of the Bankruptcy Code, all in the manner and subject to the terms set forth in this Agreement, the Sale Approval Order (defined herein) and in accordance with other applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the applicable approval orders entered by the Bankruptcy Court.

F.      On January 31, 2013, Trustee filed with the Bankruptcy Court his Motion to Approve Procedures for the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, Authorizing the Assumption, Assignment, and Sale of certain Executory Contracts and Unexpired Leases, Rejection of Certain Executory Contracts and Unexpired Leases and Granting Related Relief, Doc. No. 122 (the "Original Motion"), as supplemented by the "Supplement to Trustee's Motion to Approve Sale Procedures for the Sale of Certain Assets and Motion to Continue Hearing to Approve Sale Procedures and to Set Hearing to Approve the Sale of Certain Assets of the Debtor Free and Clear of All Liens, Claims, Encumbrances and Other Interests" dated April 15, 2013, Doc. No. 186 (the "Supplement") and collectively, the "Sale Procedures Motion") pursuant to which Trustee, among other things, (i) sets forth the basic terms of the sale of the Purchased Assets to Purchaser by attaching a copy of this Agreement to the Supplement, since the Original Motion contains terms that were superseded by the terms of this Agreement which terms do not appear in the text of the Supplement, (ii) seeks approval of the sale of the Purchased Assets to Purchaser pursuant to this Agreement and (iii) requests that the Bankruptcy Court set procedures for a potential auction of the Purchased Assets if any entity other than the Purchaser submits to Trustee a bid for the purchase of the Purchased Assets in excess of the Purchase Price. The Order approving the Sale Procedures Motion shall hereinafter be referred to as the "Sale Procedures Order."

NOW, THEREFORE, in consideration of the foregoing and their respective representations, warranties, covenants and agreement herein contained, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Seller and the Purchaser hereby agree as follows:

## ARTICLE 1

### SALE OF PROPERTY

1.1.    *Sale of Purchased Assets*. On the terms and subject to the conditions set forth in this Agreement, at the Closing (hereinafter defined), Purchaser shall (a) purchase, accept and acquire from Seller, and Seller shall sell, transfer, assign, convey and deliver to Purchaser, free and clear of all encumbrances, claims and other interests, the Purchased Assets and (b) assume and thereafter pay or perform as and when due, or otherwise discharge, all of the Assumed

Liabilities. The "Purchased Assets" shall consist of the right, title, and interest that Seller possesses and has the right to legally transfer in and to all of the properties, assets, rights, titles and interests of every kind and nature, owned, leased, used or held for use by Seller (including indirect and other forms of beneficial ownership), whether tangible or intangible, real, personal or mixed, and wherever located and by whomever possess in each case, as the same may exist as of the Closing, including the following properties, assets, rights, titles and interests (but in every case excluding the Excluded Assets):

(a) All inventories, raw materials, work-in-process, finished goods, related supplies, stocks, parts, packaging materials or other accessories related thereto, wherever located, including any of the foregoing in the possession of manufacturers, suppliers, customers, dealers or others and any of the foregoing in transit or that is classified as returned goods (collectively, the "Inventory"). As set forth in Section 1.2(c) of this Agreement, international books which cannot be rented or sold are expressly excluded from Inventory, and therefore excluded from the Purchased Assets;

(b) accounts and accounts or notes receivable or other such claims for money due to Seller, including the full benefit of all security for such accounts, notes and claims, however arising, including arising from the rendering of services or the sale of goods, together with any unpaid interest accrued thereon from the respective obligors and any security or collateral thereof (collectively, the "Accounts");

(c) All machinery, equipment, hardware, spare parts, tools, gauges, fixtures, business machines, and computer hardware, any other tangible information technology assets, furniture, related supplies, vehicles, spare parts in respect of any of the foregoing and other tangible personal property (other than "Inventory") (collectively, the "Personal Property");

(d) (i) All Intellectual Property, whether owned, licensed or otherwise held, and whether or not registerable and (ii) all rights and benefits associated with the foregoing, including all rights to sue or recover for past, present and future infringement, misappropriation, dilution, unauthorized use or other impairment or violation of any of the foregoing, and all income, royalties, damages and payments now or hereafter due or payable with respect to the foregoing (collectively, the "Intangible Assets"). "Intellectual Property" for purposes of this Agreement means all patents, trademarks, copyrights, trade secrets, trade names, website rights, software, all rights under licenses and all concepts, ideas, know-how, show-how, proprietary information, technology, formulae, processes and other general intangibles of like nature, and other intellectual property to the extent entitled to legal protection as such, including products under development and methodologies therefor, in each case acquired, owned or licensed by Seller.

(e) Subject to Section 6 of this Agreement, all Executory Contracts set forth on Schedule 1.1(e) to this Agreement (the "Purchased Contracts"). For purposes of this Agreement, "Executory Contract(s)" means any executory contract or unexpired lease of personal property or nonresidential real property;

(f)     All cash and cash equivalents in Trustee's bank accounts on the Final Closing, all bank deposits and lockboxes related thereto (excluding funds identified as Excluded Assets herein) (collectively, the "Cash");

(g)     All approvals, contracts, authorizations, permits, licenses, easements, Orders, certificates, registrations, franchises, qualifications, rulings, waivers, variances or other forms of permission, consent, exemption or authority of any Governmental Authority, including all pending applications therefor and all renewals and extensions thereof (collectively, the "Permits") other than to the extent that any of the foregoing relate exclusively to the Excluded Assets or Excluded Liabilities;

(h)     All credits, cash true-ups, deferred charges, prepaid expenses, deposits, advances, warranties, rights, guarantees, surety bonds, letters of credit, trust arrangements and other similar financing arrangements, in each case, relating to the Purchased Assets or Assumed Liabilities, including all warranties, rights and guarantees (whether express or implied) made by suppliers, manufactures, contractors or other third parties to Seller under or in connection with the Purchased Contracts; provided that, for the avoidance of doubt, the references in this subsection (h) to guarantees shall exclude guarantees of any indebtedness owed by Seller to any person or entity, including, but not limited to, B&T;

(i)     All claims and causes of action against suppliers and other third parties related to the Purchased Assets and Assumed Liabilities, other than (x) those claims and causes of action which are excluded below under Sections 541, 542, 544, 547, 548, 549, 550, 553 of the Bankruptcy Code, state law or common law or by operation of law (y) all claims and causes of action of every kind and nature, whether under the Bankruptcy Code, state law or otherwise, against affiliates of the Seller, including but not limited to, Southeastern Book Company ("SEB"), Blackrock Investments LLC ("Blackrock"), Integrated Computer Solutions ("ICS"), Bookdoodles University Book & Bean ("B&B"), Cabling Concepts, Inc. ("CCI"), Innovative Printing & Graphics ("Innovative"), CIK Capital ("CIK"), Global Communications ("Global"), Technology Associates, Inc. ("Tech Associates"), Dev Source, Vintage Rose Emporium ("Vintage Rose"), Elements, Butcher Block, LLC ("Butcher Block"), Excess, James Bayou, University Plaza, Jack Max, LLC ("Jack Max"), Charles A. Jones and David B. Griffin and (z) all claims and causes of action of every kind and nature whether under the Bankruptcy Code, state law or otherwise, against B&T and/or any of its affiliates.

(j)     All books, records, ledgers, files, documents, correspondence, list, specifications, surveys, drawings, advertising and promotional materials, reports and other materials, including tax books and records and tax returns used or held for use in connection with the Purchased Assets or Assumed Liabilities, including the Purchased Contracts, customer lists, customer information and account records, computer files, data processing records, employment and personnel records, advertising and marketing data and records, credit records relating to suppliers, legal records and information and other data provided that the Trustee shall retain a copy of the foregoing to the extent necessary to administer the Bankruptcy Estate]; and

(k)     All goodwill and other intangible personal property arising in connection with the ownership, license, use or operation of the Purchased Assets or Assumed Liabilities.

1.2.    **Excluded Assets.**  Notwithstanding anything to the contrary contained in Section 1.1 or elsewhere in this Agreement, Seller shall retain all of its right, title and interest in and to, and shall not, and shall not be deemed to, sell, transfer, assign, convey or deliver to Purchaser, and the Purchased Assets shall not be deemed to include the following (collectively, the "Excluded Assets"):

(a)    All Personal Property that is set forth on Schedule 1.2(a) or subject to a Contract designated as an Excluded Contract (collectively, the "Excluded Personal Property");

(b)    Inventory that is set forth on Schedule 1.2(b) (collectively, the "Excluded Inventory");

(c)    Deposit Accounts and the Cash therein that are set forth on Schedule 1.2(c) (collectively, the "Excluded Cash")

(d)    (i) All Executory Contracts that have not been designated as Purchased Contracts in accordance with Section 6 of this Agreement as of the Designation Date or that are determined, pursuant to an Order, not to be assumable and assignable to Purchaser, and (ii) all non-Executory Contracts of which performance by a third-party or counter party is substantially complete and for which  Seller owes a continuing and future obligation with respect to such non-Executory Contract (collectively, the "Excluded Contracts"), including any accounts receivable arising out of, or in connection with, any Excluded Contract;

(e)    All books, records, ledgers, files, documents, correspondence, lists, specifications, drawings, advertising or promotional materials, reports and other materials relating exclusively to the Excluded Assets or Excluded Liabilities and any books, records and other materials that Seller is required by law to retain;

(f)    The corporate formation documents, including operating agreement, qualification to conduct business as a foreign company, arrangements with registered agents relating to foreign qualifications, taxpayer and other identification numbers, corporate seal, minute books and any other documents relating to the organization, maintenance or existence of Seller;

(g)    All claims against suppliers and other third parties related exclusively to the Excluded Assets or Excluded Liabilities;

(h)    All of Seller's claims under this Agreement, the Bankruptcy Code and state law (including common law), of whatever kind or nature, as set forth in Sections 541, 542, 544, 547, 548, 549, 550, 553 and any other applicable provisions of the Bankruptcy Code and any related claims and causes of actions arising under such sections of the Bankruptcy Code or state law and all other claims and causes of action and rights of setoff of the Bankruptcy Estate whether under the Bankruptcy Code, state or federal law, by operation of law or otherwise, including any and all proceeds of the foregoing;

(i)    All of Seller's claims and causes of action and the proceeds thereof whether arising under the Bankruptcy Code, State law or otherwise against any affiliate(s) of Seller, including, but not limited to SEB, Blackrock, ICS, Bookdoodles, B&B, CCI, Innovative, CIK, Global Communications, Tech Associates, Dev Source, Vintage Rose, Elements, Butcher Block,

Excess, James Bayou, University Plaza, Jack Max, Charles A. Jones and David B. Griffin, including, but not limited to accounts receivable owed to Seller by affiliates;

(j)     All of Seller's claims and causes of action of every kind and nature whether under the Bankruptcy Code, state law or otherwise, against B&T and/or any of its affiliates;

(k)     All credits, deferred charges, prepaid expenses, deposits and advances, warranties, rights, guarantees, surety bonds, letters of credit, trust arrangement and other similar financing arrangement, in each case, relating exclusively to the Excluded Assets or Excluded Liabilities;

(l)     All Permits, to the extent they relate exclusively to the Excluded Assets or Excluded Liabilities; and

(m)     All insurance proceeds with respect to the Purchased Assets, arising from a loss incurred prior to the Closing Date.

1.3.    ***Assumed Liabilities.*** The "<u>Assumed Liabilities</u>" shall consist only of the following Liabilities of Seller:

(a)     All liabilities under each Purchased Contract;

(b)     All cure amounts under each Executory Contract that becomes a Purchased Contract;

(c)     All post-petition business liabilities of the Seller, incurred in the ordinary course of business after January 1, 2013, which have not been paid on or prior to the Closing Date in the ordinary course of business;

(d)     All taxes incurred post-petition by the Seller, including any state tax claims which may have been incurred, regardless of whether tax returns have been filed;

(e)     All transfer taxes payable in connection with the sale, transfer, assignment, conveyance and delivery of the Purchased Assets pursuant to the terms of this Agreement; and

(f)     All liabilities arising out of, relating to, in respect of, or in connection with the use, ownership or sale of the Purchased Assets after the Closing; provided however, that such liabilities shall not be included in determining the adjustment, if any, to the Purchase Price under section 1.5(e) of this Agreement.

1.4.    ***Excluded Liabilities.*** Seller acknowledges and agrees that pursuant to the terms and provisions of this Agreement, Purchaser will not assume, or become liable to pay, perform or discharge any liability of Seller, whether occurring or accruing before, at or after the Closing, other than the Assumed Liabilities. Therefore, the "<u>Excluded Liabilities</u>" shall consist of every liability of Seller other than the Assumed Liabilities, including but not limited to the accounts payable associated with or arising from the Inventory prior to Closing and all claims, liabilities and obligations of Seller whether occurring or accruing before, at or after the Closing.

1.5.    ***Closings and Purchase Price.***

(a)    *Closings.* The parties shall hold a closing (the "Closing") on the next business day (the "Closing Date") after the Sale Approval Order becomes a Final Order, but in no event shall the Closing occur later than June 30, 2013. The transactions contemplated hereby shall take place at the office of Frost Brown Todd LLC, 150 3rd Avenue South, Suite 1900, Nashville, TN 37201 or at such other place or such other date as the parties may agree in writing.

(b)    *Purchase Price.* Subject to Section 1.5(e), the purchase price for the Purchased Assets (the "Purchase Price") is Four Million Five Hundred Thousand Dollars ($4,500,000.00), consisting of (i) Four Million One Hundred Thousand Dollars ($4,100,000) in the form of a credit bid and (ii) the Assumed Liabilities.

(c)    *Application of Credit Bid.* The first $500,000 of any credit bid of Purchaser shall be considered as partial satisfaction of the post-petition financing advances made by Purchaser, pursuant to a DIP Financing Order, Docket #58, in order to acquire intangible assets and/or other property which may not be subject to the first priority security interest of the Security Bank Claim. The remaining post-petition claim of the Purchaser consisting of $495,000 (and its rights granted in the DIP Financing Order) shall be bid in part in respect of the funds the Bankruptcy Estate may have realized from any avoidance action against Carolina Internet, Ltd. if such contract were not assumed pursuant to this Agreement and in part as a set off by Purchaser against any avoidance action which the Trustee may be able to assert against Purchaser or Security Bank in respect of certain funds received by Security Bank in respect of the Security Bank loans.   Any further claim of Purchaser as a creditor shall be derived solely from the assignment of the Security Bank Claim to Purchaser, which claim shall be reduced by the balance of the credit bid (i.e., if the credit bid is $4,100,000, the Security Bank Claim shall be reduced by $3,105,000 leaving a unsecured claim of $4,461,203. It is acknowledged by Purchaser that the Security Bank Claim is not secured by any claims of Seller under Section 541, 542, 544, 547, 548, 549, 550, 553 or any claims or causes of action against any affiliates of the Seller and Purchaser's sole right with respect to any proceeds from any such claims or causes of action shall be limited to its rights, if any, as an unsecured creditor with respect to the balance of the Security Bank Claim.Deposit Requirement**.** In the event the Trustee receives any Competing Bids (as defined in the Sale Procedures Order) by the Bid Deadline, Purchaser shall provide to Trustee a cash deposit or acceptable letter of credit in an amount equal to $400,000.00 (the "Deposit"), within one (1) business day after the Bid Deadline to fulfill the Earnest Money Deposit bid requirement set forth in the Sale Procedures Motion. Such Deposit shall be released on the Closing Date to Purchaser.

(d)    *Adjustment of Credit Bid Portion of Purchase Price.* In the event the Assumed Liabilities at Closing exceed $400,000, the credit bid portion of the Purchase Price shall be reduced by an amount equal to the amount of Assumed Liabilities exceeding $400,000. (For example, if Assumed Liabilities total $500,000 at Closing, the Purchase Price will be (i) $4,000,000 in the form of a credit bid and (ii) the Assumed Liabilities.)

## ARTICLE 2

### CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES

2.1. ***Conditions to Obligations of Purchaser and Seller.*** The respective obligations of Purchaser and Seller to consummate the transaction contemplated by this Agreement are subject to the fulfillment or written waiver (to the extent permitted by applicable law), prior to or at the Closing, of each of the following conditions:

(a) The Bankruptcy Court shall have entered a Sale Approval Order in the Bankruptcy Case on terms acceptable to the parties, and such Order shall be a Final Order and shall not have been vacated, stayed or reserved; provided, however, that the conditions contained in this Section 2.1(a) shall be satisfied notwithstanding the pendency of an appeal if the effectiveness of the Sale Approval Order, as applicable, has not been stayed.

(b) No Order or law of a United States Governmental Authority shall be in effect that declares this Agreement invalid or unenforceable or that restrains, enjoins or otherwise prohibits the consummation of the transactions contemplated by this Agreement (including without limitation regulatory approval).

For purposes of this Agreement, "Order" shall mean any writ, judgment, decree, stipulation, agreement, determination, injunction or similar order of any Governmental Authority, whether temporary, preliminary or permanent. "Final Order" shall mean (i) an Order of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall be pending, or (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such Order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such Order was appealed, or certiorari has been denied, or form which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that no Order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such Order. "Governmental Authority" shall mean any United States or non –United States federal, national, provincial, state or local government or other political subdivision thereof, any entity, authority, agency or body exercising executive, legislative, judicial, regulatory or administrative functions of any such government or political subdivision, and any supranational organization of sovereign states exercise such functions for such sovereign states.

(c) Seller shall have entered into a stipulation with B&T (the "B&T Stipulation"), stipulating, among other things, that B&T has an allowed first priority secured claim in the amount of $873,167 in respect of the B&T First Priority Secured Claim, which amount shall be paid by the Trustee to B&T on the Closing Date. Pursuant to the B&T Stipulation, each of B&T and Seller shall have reserved all of their respective rights with respect to the balance of the B&T Secured Claim.

2.2. ***Conditions to Obligations of Purchaser.*** The obligations of Purchaser to consummate the

transactions contemplated by this Agreement are subject to the fulfillment or written waiver, prior to or at the Closing, of each of the following conditions:

(a)     The Purchaser shall have completed its due diligence review (its "Due Diligence Review") of the Seller and the Purchased Assets on or before the Due Diligence Date (as defined herein).

(i) The "Due Diligence Date" will be **April 30, 2013**.

(ii) If at any time prior to 5:00 p.m. on the Due Diligence Date, Purchaser is not satisfied, in its sole discretion, with the results of its Due Diligence Review of the Seller and Purchased Assets, then Purchaser may deliver notice to Sellers stating that Purchaser has decided not to purchase the Purchased Assets (the "Due Diligence Termination Notice") and the parties will have no further obligations pursuant to this Agreement except those that are expressly stated to survive, and Purchaser shall be entitled to the immediate return of the Deposit. If Purchaser fails to deliver the Due Diligence Termination Notice to Seller by the prescribed time on the Due Diligence Date, then Purchaser will be deemed to have elected to proceed to purchase the Purchased Assets pursuant to this Agreement.

(iii) Seller agrees to cooperate with Purchaser and Purchaser's designees in the completion of its Due Diligence Review.

(b)     Each of the representations and warranties  contained in Article 3 of this Agreement, shall be true and correct as of the Closing Date as if made on the Closing Date (expect for representations and warranties that speak of a specific date or time, which representations and warranties shall be true and correct only as of such date or time), except to the extent that any breaches of such representations and warranties, individually or in the aggregate, have not had, or would not reasonably be expected to have a Material Adverse Effect. For purposes of this Agreement, "Material Adverse Effect" means a state of facts, event, change or effect on the value of the Purchased Assets that results in a material adverse effect on the value of the Purchased Assets taken as a whole, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (i) any action of the Seller pursuant to any order of the Bankruptcy Court entered before the Effective Date, including, without limitation, the transactions contemplated by this Agreement or the announcement thereof; (ii) changes in economic, regulatory or political conditions generally; (iii) changes resulting from, or from any motion, application, pleading or order filed related to, the Bankruptcy Case before the Closing, or (iv) any act(s) of war or terrorism.

(c)     Seller shall have performed or complied in all material respects with all agreements and obligations required by this Agreement to be performed or complied with by Seller prior to or at the Closing.

(d)     No change with respect to the ownership or operation or the financial or physical condition of the Purchased Assets or any part thereof has occurred that has or would reasonably be expected to have a Material Adverse Effect on the Purchased Assets since the Effective Date.

(e)     Intentionally blank.

(f)     Trustee shall have delivered, or caused to be delivered, to Purchaser:

(i) a bill of sale, substantially in the form attached hereto as <u>Exhibit A</u> executed by Trustee transferring the Personal Property to Purchaser, and all other instruments of conveyance that are necessary to effect transfer to Purchaser of title to the Personal Property ("<u>Bill of Sale</u>");

(ii) an assignment and assumption agreement, substantially in the form attached hereto as <u>Exhibit B</u> executed  by Trustee transferring the Purchased Contracts and Assumed Liabilities to Purchaser, and all other instruments of conveyance that are necessary to effect transfer to Purchaser the Purchased Contracts and Assumed Liabilities (the "<u>Assumption and Assignment Agreement</u>"); [Please Attach]

(iii) an intellectual property assignment agreement, substantially in the form attached hereto as <u>Exhibit C</u> executed  by Trustee transferring the Intellectual Property to Purchaser, and all other instruments of conveyance that are necessary to effect transfer to Purchaser the Intellectual Property (the "<u>Intellectual Property Assignment Agreement</u>") [Please Attach];

(iv)  all books and records of Seller described in Section 1.1(i)

2.3.    ***Conditions to Obligations of Seller.*** The obligations of Seller to consummate the transaction contemplated by this Agreement are subject to the fulfillment or written wavier, prior to or at the Closing, of each of the following conditions:

(a)     Each of the representations and warranties of Purchaser contained in Article 3 of this Agreement shall be true and correct as if made on the Closing Date (expect for representations and warranties that speak of a specific date or time, which representations and warranties shall be true and correct only as of such date or time), except to the extent that any breaches of such representations and warranties, individually or in the aggregate, have not had, or would not reasonably  be excepted to have a Material Adverse Effect.

(b)     Purchaser shall have performed or complied in all material respects with all agreements and obligations required by this Agreement to be performed or complied with by it prior to or at the Closing.

(c)     Purchaser shall have delivered, or caused to be delivered, to Seller:

(i)    the Purchase Price by cash payment and credit bid as provided herein;

(ii) a certificate executed as of the Closing Date by a duly authorized representative of the Purchaser, on behalf of the Purchaser and not in such authorized representative's individual capacity, certifying that the conditions set forth in Section 2.3 (a) and Section 2.3(b) have been satisfied;

(iii) the Bill of Sale, duly executed by Purchaser;

(iv)  the Assignment and Assumption Agreement, duly executed by Purchaser;

(v)  the Intellectual Property Assignment Agreement, duly executed by Purchase;

(vi)  a certificate of a duly authorized representative of Purchaser (A) certifying that attached to such certificate are true and complete copies of (1) Purchaser's Organizational Documents, each as amended through and in effect on the Closing Date and (2) joint resolutions of the sole manager and member of Purchaser, authorizing the execution, delivery and performance of this Agreement and the related agreements to which Purchaser is a party and the consummation of the transactions contemplated by this Agreement and such related agreements, and (B) certifying as to the incumbency of the officer(s) of Purchaser executing this Agreement and the related agreements to which Purchaser is a party;

(vii) a certificate of good standing for Purchaser from the Tennessee Secretary of State; and

(viii) a certificate executed as of the Closing Date by a duly authorized representative of the Purchaser, on behalf of the Purchaser and not in such authorized representative's individual capacity, certifying that (A) Purchaser has adopted the Privacy Policy of College Book Rental Company, LLC (the "<u>Policy</u>"), as stated on its website, and (B) Purchaser will comply with such Policy.

# ARTICLE 3

## REPRESENTATIONS AND WARRANTIES

3.1.  ***Trustee's Representations and Warranties***. Trustee represents to Purchaser the following:

(a)  Subject to the entry and effectiveness of the Sale Approval Order, Trustee will have the requisite court authority and power to (i) execute and delivery this Agreement and related agreements to which Seller is a party; (ii) perform its obligations hereunder and thereunder; and (iii) consummate the transactions contemplated by this Agreement and the related agreements to which Seller is a party.

(b)  Trustee has full power and authority to perform and comply with the terms of this Agreement and, to the best of the Trustee's knowledge, neither the execution and delivery of this Agreement nor its performance will (i) conflict with, result in the breach of, or cause an acceleration of Seller's obligation under, any contract or agreement to which such Seller is a party or by which such Seller or the Purchased Assets are bound.

(c)  Seller has not entered into any agreements to lease, sell or otherwise encumber or dispose of any interest in the Purchased Assets, except for this Agreement and as otherwise disclosed herein.

(d)  Title to the Purchased Assets and the authority to transfer that title has been, or will be established by Court order, which shall be transferred to Purchaser, free and clear of all encumbrances; provided that B&T shall have been paid at or prior to the Closing $873,167 in respect of the B&T First Priority Secured Claim.

(e)     The monthly reports filed with the Court and the post-petition cash flow statements of the Seller and delivered to Purchaser fairly represent the operations and cash flow as of the respective dates and for the periods referred to therein.

3.2.     ***Purchaser's Representations and Warranties***. Purchaser represents and warrants to Seller the following:

(a)     Purchaser is a duly organized and validly existing under the laws of its jurisdiction of organization. Purchaser is duly qualified and licensed or admitted to do business, and is now in good standing in (where such concept is recognized under applicable law) the jurisdictions in which the ownership of its property or the conduct of its business requires such qualification or licenses. Purchaser has made available to Seller prior to the execution of this Agreement, true and complete copies of Purchaser's Organizational Documents, in each case, as in effect on the date of this Agreement.

(b)     Purchaser has the requisite corporate authority and power to (i) execute and deliver this Agreement and related agreements to which Purchaser is a party; (ii) perform its obligations hereunder and thereunder; and (iii) consummate the transactions contemplated by this Agreement and the related agreements to which Purchaser is a party. This Agreement constitutes, and each related agreement, when duly executed and delivered by Purchaser that is party thereto, shall constitute, a valid and legally binding obligation of Purchaser, enforceable against Purchaser in accordance with its respective terms and conditions, except as enforceability may be limited by applicable bankruptcy, reorganization, insolvency, moratorium, fraudulent transfer and other similar laws relating to or affecting the enforcement of creditors' rights generally from time to time in effect and by general equitable principles relating to enforceability, including principles of commercial reasonableness, good faith and fair dealing.

(c)     Purchaser has full power and authority to perform and comply with the terms of this Agreement and neither the execution and delivery of this Agreement nor its performance will (i) conflict with, result in the breach of, or cause an acceleration of Purchaser's obligation under, any contract or agreement to which Purchaser is a party or by which Purchaser is bound; or (ii) violate any statute, ordinance, rule or regulation to which Purchaser is subject.

(d)     On the Closing Date, the Purchaser will have sufficient funds available to finance and consummate the transactions contemplated by this Agreement, including the payment of the Purchase Price.

3.3.     ***Warranties Exclusive.*** The parties acknowledge that the representations and warranties contained in Article 3 are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed.  Without limiting the foregoing the Purchaser acknowledges that the Purchased Assets are conveyed "AS IS", "WHERE IS" and 'WITH ALL FAULTS" and that all warranties of merchantability or fitness for a particular purpose are disclaimed.  WITHOUT LIMITING THE FOREGOING THE PURCHASER ACKNOWLEDGES THAT THE SELLER AND ITS REPRESENTATIVES HAVE MADE NO REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE PURCHASED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION

OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE PURCHASED ASSETS OR THE ASSUMPTION OF THE ASSUMED LIABILITIES, (III) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO THE PURCHASER OR ITS REPRESENTATIVES OR (IV) EXCEPT AS EXPRESSLY SET FORTH IN SECTION 3.1, THE CONDITION OF THE PURCHASED ASSETS, INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY LAWS.

## ARTICLE 4

### COVENANTS AND OTHER AGREEMENTS

4.1.    *Access to Information*.

   (a)    *Access to Seller's Executives and Facilities*. Seller agrees that, until the earlier of the Due Diligence Date and the termination of this Agreement, Purchaser shall be entitled, through its representatives or otherwise, to have reasonable access to the executive officers and representatives of Seller and the properties and other facilities, businesses, books, contracts, personnel records and operations (including the Purchased Assets and Assumed Liabilities), of Seller to conduct its Due Diligence Review; provided however, that no such investigation or examination shall be permitted to the extent that it would, in Seller's reasonable determination, require Seller or any of its representatives to disclose information subject to attorney-client privilege or in conflict with any confidentiality agreement to which Seller is bound (in which case, to the extent requested by Purchaser, Seller will use reasonable best efforts to seek an amendment or appropriate waiver, or necessary consents, as may be required to avoid such conflict, or restructure the form of access, so as to permit the access requested).  If any material is withheld pursuant to this Section 4.1(a), Seller shall inform Purchaser in writing as to the general nature of what is being withheld and the reason for withholding such materials.

   (b)    *Confidentiality*.  Any investigation and examination contemplated by, and any information obtained by Purchaser under this Section 4.1 and in connection with its Due Diligence Review, shall be kept confidential.  Seller shall cooperate, and shall cause its representatives to cooperate, with Purchaser and representatives in connection with such investigation and examination. Without limiting the generality of the foregoing, subject to Section 4.1(a), such investigation and examination shall include reasonable access to Seller's executive officers (and employees of Seller), offices, properties, and other facilities, and books, contracts and records (including any document retention policies of Seller) and access to accountants of Seller (provided that Seller shall have the right to be present at any meeting between any such accountant and Purchaser, whether such meeting is in person, telephonic or otherwise) and Seller shall prepare and furnish to Purchaser such additional financial and operating data and other information as Purchaser may from time to time reasonably request, subject, in each case, to the confidentiality restrictions outlined in this Section 4.1. Notwithstanding anything contained herein to the contrary, Purchaser shall consult with Seller prior to conducting any environmental investigations or examinations of any nature..

4.2.    *Bankruptcy Court Approval*.

(a)     *Sale Procedures Order and Auction.* The terms of the Sale Procedures Order are incorporated herein by reference. Pursuant to the terms of the Sale Procedures Order, if any party in interest or any other interested purchaser, other than the Purchaser, submits to the Trustee a bid for the purchase of the Purchased Assets which is in excess of the Purchase Price, the Trustee will proceed to conduct an auction of the Purchased Assets (the "Auction") pursuant to the sale procedures set forth in the Sale Procedures Order to be held at 10:00 a.m. (Prevailing Central Time) on June 4, 2013 at the Trustee's office (the "Auction Date"). At the Auction, Purchaser shall have the right to credit bid up to $8,161,203 (this credit bid, in addition to the $400,000 or less being applied to Assumed Liabilities results in a total potential bid of $8,561,203. Notwithstanding this cap on a potential credit bid, nothing herein shall be construed as limiting the total debt owed to Purchaser as detailed in Recital B herein and the Purchaser's ability to pursue any remaining debt owed to Purchaser in the Bankruptcy Case.  If the Trustee does not receive any Competing Bids by May 28, 2013, the Bid Deadline, the Trustee will promptly proceed with the sale of the Purchased Assets to Purchaser pursuant to the terms of this Agreement upon entry of the Sales Approval Order (defined below).

(b)     *Sale Approval Order.*  If an Auction is not held by Trustee or Purchaser is the winning bidder at the Auction, Seller shall sell the Purchased Assets to Purchaser pursuant to Section 363 of the Bankruptcy Code pursuant to an Order reasonably acceptable to Purchaser (the "Sale Approval Order"). In such an event, Seller shall use reasonable best efforts to obtain entry by the Bankruptcy Court of the Sale Approval Order as soon as reasonably practicable. To the extent reasonably practicable, Seller shall consult with and provide Purchaser a reasonable opportunity to review and comment on material motions, applications and supporting papers prepared by Seller in connection with this Agreement prior to the filing or delivery thereof in the Bankruptcy Case.

(c)     *Approval; Alternative Transaction.* This Agreement is subject to approval by the Bankruptcy Court. Nothing contained herein shall be construed to prohibit the Seller from soliciting, considering, negotiating, agreeing to, or otherwise taking action in furtherance of, any Alternative Transaction (as defined herein) but only to the extent that the Trustee determines in good faith that such actions are permitted by law.

(d)     *Compliance with Law.* Trustee shall use reasonable best efforts to comply (or obtain an Order from Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedures in connection with obtaining approval of the transactions contemplated by this Agreement, including serving on all required persons in the Bankruptcy Case, a notice of the Sale Procedures Order, related hearing and any objection deadlines related thereto, all in accordance with the Federal Rules of Bankruptcy Procedure (as modified by the Orders of the Bankruptcy Court), or other Orders of the Bankruptcy Court and any applicable local rules of the Bankruptcy Court.

(e)     *Purchaser's Review and Comment.* Trustee shall provide Purchaser with a reasonable opportunity to review and comment on all motions, applications and supporting papers prepared by Seller in connection with this Agreement (including forms of Orders and of notices to interested parties) prior to filing or delivery thereof in the Bankruptcy Case. All motions, applications and supporting papers prepared by Seller and relating to approval of this Agreement (including forms of Orders and of notices to interested parties) to be filed or

delivered on behalf of the Seller shall be reasonably acceptable in form and substance to Purchaser. Trustee shall provide written notice to Purchaser of all matters that are required to be served on Seller's creditors pursuant to the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. In the event the Sale Approval Order is appealed, Trustee shall use reasonable efforts to defend such appeal(s).

(f)     *Cooperation.* Purchaser agrees, to the extent reasonably requested by Trustee, to cooperate and assist Trustee in seeking entry of the Sale Approval Order by the Bankruptcy Court, including attending all hearings related thereto.

4.3.     ***Further Assurances***. Upon the terms and subject to the conditions set forth in this Agreement, each of the parties shall use their reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all actions necessary, proper or advisable to consummate and make effective as promptly as practicable, the transactions contemplated by this Agreement in accordance with the terms hereof and to bring about the satisfaction of all other conditions to the other parties' obligations hereunder; provided, however, that nothing in this Agreement shall obligate Seller or Purchaser, or any of their respective affiliates, to waive or modify any of the terms and conditions of this Agreement or any documents contemplated hereby, except as expressly set forth herein. The parties shall negotiate the forms, terms and conditions of the agreements related to this Agreement, to the extent the forms are not attached to this Agreement, in good faith, with such agreements to set forth terms on an arms-length basis and incorporate usual and customary provisions for similar agreements.

4.4.     ***Tax Matters; Cooperation***.

(a)     *Tax Returns*. Prior to the Closing, Seller shall prepare and timely file (or cause to be prepared and timely filed) all tax returns required to be filed prior to such date (taking into account any extension of time to file granted or obtained) that relate to Seller or Purchased Assets in a manner consistent with past practices (expect as otherwise required by law), and shall provide Purchaser prompt opportunity for review and comment and shall obtain Purchaser's prior written approval prior to filing any such tax returns. After the Closing Date, at Purchaser's election, Purchaser shall prepare, and Seller shall timely file, any tax return relating to Seller for any pre-Closing tax period due after the Closing Date or other taxable period of any entity that includes the Closing Date, subject to the right of Seller to review any such material tax return. Purchaser shall prepare and file all other tax returns required to be filed after the Closing Date in respect of the Purchased Assets.

(b)     *Cooperation*. Purchaser and Seller shall provide each other with such assistance and non-privileged information relating to the Purchased Assets as may be reasonably requested in connection with any tax matter, including the tax matters contemplated by this Section 4.4, including the preparation of any tax return or the performance of any audit, examination or other proceeding by a taxing authority, whether conducted in judicial or administrative forum.  Purchaser and Seller shall retain and provide to each other all non-privileged records and other information reasonably requested by the other that may be relevant to any such tax return, audit, examination or other proceeding.

(c) *Examinations and Audits*. After the Closing, at Purchaser's election, Purchaser shall exercise exclusive control over the handling, disposition and settlement of any inquiry, examination or proceeding (including an audit) by a Governmental Authority (or that portion of any inquiry, examination or proceeding by a Governmental Authority) with respect to Seller, provided that to the extent any such inquiry, examination or proceeding by a Governmental Authority could materially affect the taxes due or payable by Seller, Purchaser shall control the handling, disposition and settlement thereof, subject to reasonable consultation rights of Seller. Each party to this Agreement shall notify the other party to this Agreement in writing promptly upon learning of any such inquiry, examination or proceeding. The parties shall cooperate with each other in any such inquiry, examination or proceeding as a party may reasonably request. Seller shall not extend, without Purchaser's prior written consent, the statute of limitations for any tax for which Purchaser may be liable.

## ARTICLE 5

### CONTINUED OPERATION OF BUSINESS

5.1. *Maintenance and Continued Operation.* Between the date of execution of this Agreement and Closing, Seller shall not, without the prior consent of Purchaser, sell, lease, subdivide, convey, grant, transfer, mortgage or otherwise dispose of, or further encumber, any portion of the Purchased Assets or any interest therein. Seller will make and continue to make or cause to be made all repairs, restoration, replacements, and maintenance between the date hereof and the Closing Date which may be necessary to maintain the Purchased Assets in as good condition as exists as of the date hereof, whether such repairs, restorations, replacements, and maintenance are ordinary or extraordinary.

## ARTICLE 6

### SUPPLEMENTS TO PURCHASED ASSETS, PURCHASED CONTRACTS, ASSUMED LIABILITIES, EXCLUDED ASSETS AND EXCLUDED LIABILITIES

6.1. *Designation Date.* Purchaser shall, until April 30, 2013 (the "Designation Date") have the right to designate in writing to Trustee (i) Executory Contracts it wishes to designate as Purchased Contracts on Schedule 1.1(e); (ii) additional Personal Property it wishes to designate as Excluded Personal Property on Schedule 1.2(b); (iii) additional Inventory it wishes to designate as Excluded Inventory on Schedule 1.2(c); (iv) additional Accounts it wishes to designate as Excluded Accounts on Schedule 1.2(d); and (v) additional liabilities it wishes to designate as Assumed Liabilities on Schedule 1.3(c). Purchaser may also remove any asset identified on Schedules 1.1(e), 1.2(b), 1.2(c), 1.2(d) and 1.3(c) until the Designation Date by designating in writing to Trustee assets it desires to be removed from such Schedules. Promptly upon Purchaser's designation of an asset pursuant to this Section 6.1, the appropriate Schedule shall be updated to reflect such designation and such asset shall be deemed to be as designated by Purchaser for all purposes under this Agreement.

6.2. *Executory Contract Cure Amounts.* If any Executory Contracts are identified as Purchased Contracts, the cure amounts, if any, as determined by the Bankruptcy Court, necessary to allow assumption and assignment under §365 of the Bankruptcy Code of the Purchased

Contracts (expect as otherwise agreed to by the other party to the Purchased Contracts), will be paid by the Purchaser. Notwithstanding anything contained herein, Purchaser shall have the right to designate any Purchased Contract as an Excluded Contract, and therefore an Excluded Asset, upon the determination of the Bankruptcy Court of the cure amount in which case such Executory Contract shall be deemed rejected by the Trustee.

6.3.    **Rejection of Executory Contracts.** Executory Contracts not designated by Purchaser as Purchased Contracts on or before the Designation Date, shall be rejected by Trustee. If no Executory Contracts are identified by Purchaser on or before the Designation Date, there will be no assumption and assignment of any Executory Contracts as part of the sale of the Purchased Assets to Purchaser pursuant to this Agreement.

## ARTICLE 7

### CLOSING COSTS AND EXPENSES

7.1.    *Costs and Expenses*. Purchaser will bear recording costs in connection with the conveyance of title under this Agreement, including the costs of recording any mortgage obtained by Purchaser in conjunction with the transaction contemplated hereby, and Purchaser's other expenses incurred in connection with this transaction. Trustee will pay the B&T First Priority Secured Claim at Closing as well as, any amounts necessary to pay the secured claims of any existing mortgages or other encumbrances on its property as directed by the Court.

## ARTICLE 8

### RISK OF LOSS

8.1.    *Risk of Loss.* Risk of loss from casualty will be borne by Seller until Closing, provided that if the any of the Purchased Assets are damaged or destroyed by fire or other casualty and not repaired, restored or replaced prior to Closing to as good a condition as existed on the Effective Date, then Purchaser will have the right, but not the obligation, to proceed with this Agreement and receive (i) the Purchased Assets in its then existing condition, (ii) all insurance proceeds or purchase monies, as applicable, paid or payable to Seller by reason of such casualty, and (iii) a credit against the Purchase Price for any deductible amount under all policies of insurance covering the Purchased Assets so damaged or destroyed, together with an assignment, in form and substance acceptable to Purchaser, of Seller's entire interest in the items referenced in (ii) and (iii) above.  Alternatively, if the Purchased Assets damaged or destroyed by fire or other casualty and not repaired, restored or replaced prior to Closing exceed $500,000 after application of any insurance proceeds and a credit against the Purchase Price for any deductible, then Purchaser may either reduce the credit bid by the amount of such excess or Purchaser shall have the right to terminate this Agreement.  If this Agreement is terminated prior to Closing other than by Seller pursuant to Section 9.1(g), the Deposit will be returned to Purchaser and neither party will have any further rights or obligations hereunder.

## ARTICLE 9

### TERMINATION

9.1.    **_Termination_**.  This Agreement may be terminated and the transactions contemplated thereby may be abandoned at any time prior to the Closing Date as follows:

(a)    By the mutual written consent of Seller and Purchaser;

(b)    By either Seller or Purchaser, if (i) the Closing Date shall not have occurred on or before June 30, 2013, or such later date as the parties may agree in writing (as extended, the "End Date"), and (ii) the party seeking to terminate this Agreement pursuant to this Section 10.1(b) shall not have breached in any material respect its obligations under this Agreement in any manner that shall have proximately caused the failure of the transactions contemplated hereby to close on or before such date;

(c)    By either Seller or Purchaser, if the Bankruptcy Court shall not have entered an Order approving the Sale Procedures Motion by May 3, 2013;

(d)    By either Seller or Purchaser, if the Bankruptcy Court shall not have entered the Sales Approval Order by June 14, 2013;

(e)    By Purchaser, pursuant to Section 2.2(a) or Section 8.1 of this Agreement;

(f)    By either Seller or Purchaser, if any court of competent jurisdiction in the United States or other United States Governmental Authority shall have issued a Final Order permanently restraining, enjoining or otherwise prohibiting the transactions contemplated by this Agreement;

(g)    By Seller, if Purchaser shall have breached or failed to perform in any material respect any of its representations, warranties, covenants or other agreements contained in this Agreement, and such breach or failure to perform has not been cured by the End Date, provided, that (i) Seller shall have given Purchaser written notice, delivered at least fifteen (15) days prior to such termination, stating Seller's intention to terminate this Agreement pursuant to this Section 9.1(g) and the basis for such termination and (ii) Seller shall not have the right to terminate this Agreement pursuant to this Section 9.1(g) if Seller is then in material breach of any of its representations, warranties, covenants or other agreements set forth herein;

(h)    By Purchaser, if Seller shall have breached or failed to perform in any material respect any of their representations, warranties, covenants or other agreements contained in this Agreement, and such breach or failure to perform has not been cured by the End Date, provided, that (i) Purchaser shall have given Seller written notice, delivered at least fifteen (15) days prior to such termination, stating Purchaser's intention to terminate this Agreement pursuant to this Section 9.1(h) and the basis for such termination and (ii) Purchaser shall not have the right to terminate this Agreement pursuant to this Section 9.1(h) if Purchaser is then in material breach of any of its representations, warranties, covenants or other agreements set forth herein;

(i)    Automatically upon Seller signing a letter of intent or purchase agreement for the sale of the Purchased Assets (in whole or in part) to any party other than the Purchaser and/or Seller consummating any transaction (or series of transactions) involving the sale of the Purchased Assets to a purchaser other than Purchaser (collectively, an "Alternative Transaction").

9.2.	***Procedure and Effect of Termination***.

(a)	*Agreement Null and Void; Survival.* If this Agreement is terminated pursuant to Section 9.1, this Agreement shall become null and void and have no effect, and all obligations of the parties hereunder shall terminate, except for those obligations of the parties set forth in this Section 9.2 and Article 11, which shall remain in full force and effect; provided that nothing herein shall relieve any party from liability for any material breach of any of its representations, warranties, covenants or other agreements set forth herein.

(b)	The Termination of this Agreement shall in no event affect the B&T First Priority Secured Claim or the B&T Stipulation entered into between B&T and the Trustee and such B&T Stipulation shall govern the rights of B&T and the Trustee with respect to payment of the B&T First Priority Secured Claim.

(c)	*Confidentiality.* If this Agreement is terminated for whatever reason, Purchaser shall treat and hold as confidential, all Confidential Information, whether documentary, electronic, oral, labeled or otherwise identified as confidential, and regardless of the form of communication or the manner in which it was furnished. For purposes of this Agreement, "Confidential Information" shall mean all proprietary, legally privileged or sensitive information related to the Seller and/or the Purchased Assets.   For purposes of this Section 9.2(d), Confidential Information shall be deemed not to include any information that (i) is now available to or is hereafter disclosed in a manner making it available to the general public, in each case, through no act or omission of the Purchaser, or (ii) is required by law to be disclosed.

# ARTICLE 10

## NOTICES

10.1.   All notices and other communications required to be given or which may be given in connection with this Agreement shall be in writing and shall be sent by (a) certified or registered mail, return receipt requested, postage prepaid, (b) national prepaid overnight delivery service, charges prepaid, or (c) personal delivery with receipt acknowledged in writing, directed to the applicable party at its address set forth below.  Any notice so sent by certified or registered mail shall be deemed given on the date of receipt or refusal as indicated on the return receipt.  All other notices shall be deemed given when actually received or refused by the party to whom the same is directed.  A notice may be given either by a party or by such party's attorney.  Either party may change its address for notices by giving written notice to the other party in accordance with this Section 10.1.

To Seller or Trustee:  Robert H. Waldschmidt
7003 Chadwick Lane, Suite 211
P.O. Box 2828
Brentwood, TN 37024
rhw@rhwlawoffice.com

To Purchaser:	CBR Funding, LLC

604 Cherry Street
Helena, AR 72342
Attn: David B. Griffin, Manager
david@dbgriffin.com

With Copy to:  Frost Brown Todd LLC
150 3rd Avenue South, Suite 1900
Nashville, TN 37201
Attn: Joseph A. Kelly, Esq.
jkelly@fbtlaw.com

# ARTICLE 11

## MISCELLANEOUS

11.1.  ***Incorporation of Recitals***. The recitals set forth above are incorporated herein by reference and are a material part of this Agreement.

11.2.  ***Defined Terms.*** Terms not otherwise defined herein shall have the meaning given to them in the Sales Procedures Motion or Sale Procedures Order, as applicable.

11.3.  ***Time is of the Essence***. Time is expressly declared to be of the essence in this Agreement.

11.4.  ***Successors and Assigns***. Except as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other parties hereto, and such attempted assignment without such prior written consent shall be void and of no force and effect. This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto.

11.5.  ***Continued Access***. Subsequent to the Closing of the sale, the Purchaser shall permit the Trustee to have continued access to the records of the Seller, as those records relate to pre-petition issues and post-petition, pre-closing operations of the Seller; in addition, the Trustee may continue to have access to the employees of the Purchaser in order to pursue any causes of action or issues which effect the Bankruptcy Estate, and said employees shall be made available to testify in any court hearing, if required by the Trustee.

11.6.  ***Governing Law; Jurisdiction***. This Agreement shall be construed, performed and enforced in accordance with the Bankruptcy Code. For as long as the Seller is subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with the Agreement and consent to the exclusive jurisdiction of the Bankruptcy Court. Any issues relating to application of state law shall be governed by the laws of the State of Tennessee.

11.7.  ***Expenses.*** Except as otherwise provided herein, each of the parties hereto shall pay its own fees, costs and expenses, including fees and disbursements of counsel, financial advisors, investment bankers, accountants and other agents and representatives, incurred in connection with the negotiations and execution of this Agreement and the transactions contemplated hereby,

whether or not the transactions contemplated hereby are consummated. In furtherance of the foregoing, the Purchaser shall be solely responsible for (a) all expenses incurred by it in connection with its due diligence review of the Seller and Purchased Assets and (b) any cost (including any filing fees) incurred by it in connection with notarization, registration or recording of this Agreement or any related agreement required by applicable law.

11.8. ***No Successor or Transferee Liability.*** Except where expressly prohibited under applicable law or otherwise expressly ordered by the Bankruptcy Court, upon the Closing, Purchaser shall not be deemed to (a) be the successor of Seller; (b) have, de facto, or otherwise, merged with or into Seller; (c) be a mere continuation or substantial continuation of Seller or the enterprise of Seller; (d) other than as set forth in this Agreement, be liable for any acts or omissions of Seller in conduct of Seller's business or arising under or related to the Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise provided in this Agreement, Purchaser shall not be liable for any claims against Seller or any of its predecessors or affiliates and Purchaser shall not have any successor, transferee or vicarious liability of any kind or character whether known or unknown as of the Closing, whether now existing or hereafter arising, or whether fixed or contingent, with respect to Seller's business or any obligations of Seller arising prior to the Closing, except as provided in this Agreement, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operations of Seller's business prior to the Closing.

11.9. ***Broker's and Finder's Fee***. Each of the parties represents and warrants that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement.

11.10. ***Severability***. If any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

11.11. ***Amendments and Waivers***. This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by the party waiving compliance. Any waiver by any party of a condition, or the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a furthering or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

11.12. ***Entire Agreement***. This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and thereby and supersedes and replaces all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. All schedules to this Agreement and any documents and instruments

delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

11.13. **Headings**. The article and section headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

11.14. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, and all of which taken together shall constitute one and the same agreement. All signatures of the parties may be transmitted by facsimile or electronic delivery, and each such facsimile signature or electronic deliver signature (including a pdf signature) will, for all purposes, be deemed to be the original signature of the party whose signature it reproduces and be binding upon such party.

11.15. **Not an Offer**. The submission of a draft of this Agreement to Seller does not constitute an offer from Purchaser. This Agreement will not become effective until original counterparts have been fully executed and delivered by Seller and Purchaser.


IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as the date first written above.

PURCHASER:
**CBR FUNDING, LLC**

By:_____
Print Name:_____
Title:_____
Date:_____


SELLER:
**THE BANKRUPTCY ESTATE OF COLLEGE BOOK RENTAL COMPANY, LLC**

By:_____
Print Name: Robert H. Waldschmidt
Title: Chapter 11 Trustee
Date:_____

## Schedule 1.1(e)

## Purchased Contracts

**Agreements**

1. Rights to the Month-to-Month tenancy of real 1. property known as 3333 US Highway 641 North, State Route 94 North, Murray, KY 42071 by Seller.

2. Master Services Agreement with Alavara, Inc. updated as of January 27, 2011.

3. Database License Agreement by and between Baker & Taylor, Inc. and College Book Rental Company, LLC dated November 12, 2012.

4. Bestborn Business Solutions

5. License Agreement by and between R.R. Bowker, LLC and College Book Rental Company, LLC dated March 20, 2013.

6. CaroNet (Domains)

7. Internet Service Agreement by and between Carolina Internet, Ltd. and College Book Rental Company, LLC dated November 17, 2011.

8. Managed Print Services Contract by and between CDW Direct, LLC and College Book Rental Company, LLC dated February 20, 2013.

9. Investigate Services Agreement by and between DaWadeCo Inc. and College Book Renter dated August 22, 2012.

10. Services Agreement by and between Edgewebhosting, Inc. and College Book Rental Company, LLC dated April 4, 2013.

11. Lease Agreement by and between Executive Place, Inc. and College Book Renter dated March 25, 2013.

12. Pricing Agreement by and between Federal Express Corporation, FedEx Ground Packaging Systems, Inc. and FedEx SmartPost, Inc. and College Book Renter dated January 3, 2013.

13. License Agreement by and between Indaba 13. Systems, LLC and College Book Rental Company, LLC dated September 11, 2012.

14. Terms and Conditions of Use for LogMein, Inc.

15.    Business Ready Flexible Pay for Microsoft Dynamics Agreement by and between Microsoft Corporation and College Book Rental Company, LLC dated December 15, 2009.

16.    Telecommunications Service Agreement by and between Murray Electric Systems and College Book Rentals dated December 1, 2012.

17.    Customer Commitment Agreement by and between USPS and College Book Renter dated December 13, 2012.

18.    Bowker Adoption Data Agreement

19.    Maintenance Agreement by and between Kewill Inc. and College Book Renter dated January 1, 2012.

20.    Software License and Support Agreement by and between Kewill Inc. and College Book Renter dated February 21, 2012.


**Verbal Contracts between Seller and the following entities:**

21.    Anonymizer

22.    Apremio

23.    Lawn Care

24.    PayChex

25.    Precision Security

26.    Proxy Server

27.    Via's Cleaning

**Schedule 1.2(a)**
**Excluded Personal Property**

[To be completed by Purchaser]

**Schedule 1.2(b)**
**Excluded Inventory**

(1)    All international books with cannot be rented or sold, which, as of March 1, 2013, consisted of 1,435 books already set aside and not being used in the operation of Seller.

**Schedule 1.2(c)**
**Excluded Cash and Accounts**

1.    Funds set aside weekly (as part of a "carve-out" for expenses) in the administrative expense account at Pinnacle Bank, Account # 9951020079 plus an additional $100,000 transferred into the administrative expense account by Trustee prior to Closing; and

2.    Funds set aside in Trustee's account at Pinnacle Bank, Account #9951020090 containing $873,167.00 transferred into such account by Trustee upon entry of the Sale Procedures Order and to be paid to Baker & Taylor at Closing whether the sale of the Purchased Assets is to Purchaser or any other bidder.

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| COLLEGE BOOK RENTAL COMPANY, LLC | ) | Case No. 12-09130-MH3-11 |
| | ) | |
| Debtor | ) | |

### BILL OF SALE AND ASSIGNMENT

WHEREAS, Robert H. Waldschmidt, as trustee, for the above Bankruptcy Estate of College Book Rental Company, LLC, pursuant to the Order (1) Approving Sale of Certain Assets of the Debtors Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (2) Authorizing the Assumption, Assignment, and Sale of Certain Executory Contracts and Unexpired Leases, and (3) Rejection of Certain Executory Contracts and Unexpired Leases dated _____, 2013 ("Sale Order"), the terms and provisions of which are hereby incorporated herein by reference, has sold and is assigning all of the estate's right, title and interest in the certain assets.

NOW THEREFORE, in consideration of the foregoing, and payment to Robert H. Waldschmidt, trustee, of the consideration referenced in the Sale Order, the receipt of which is hereby acknowledged, Robert H. Waldschmidt, trustee, has bargained and sold, and by this instrument, pursuant to the terms of the Sale Order, does hereby assign, transfer and convey to CBR Funding, LLC, its successors and assigns, the following:

All of the Purchased Assets as defined in the Sale Order
and incorporated herein by reference.

This assignment makes no warranty of any kind, expressed or implied, with respect to the property conveyed pursuant to this instrument.

IN WITNESS WHEREOF, Robert H. Waldschmidt, Trustee, has executed this instrument on this _____ day of June, 2013.

_____
Robert H. Waldschmidt, Trustee
for the Bankruptcy Estate of
College Book Rental Company, LLC

Sworn to and subscribed before me this
_____ day of _____, 2013.

_____
Notary Public
Commission Expires:

**Exhibit B**
**ASSIGNMENT AND ASSUMPTION AGREEMENT**

This **ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "Assignment and Assumption Agreement") dated _____, 2013 (the "Effective Date") is made by and between The Bankruptcy Estate of College Book Rental Company, LLC, Case No. 12-09130-MH3-11 (the "Assignor"), by and through Robert H. Waldschmidt, 7003 Chadwick Drive, Brentwood, TN 37024-2828, as Chapter 11 trustee of the Assignor (the "Trustee") and CBR Funding, LLC, a Tennessee limited liability company with an address of 604 Cherry Street, Helena, AR 72342 (the "Assignee").

## RECITALS

A.      This Assignment and Assumption Agreement is being entered in order to carry out the provisions of the Order of the United States Bankruptcy Court for the Middle District of Tennessee in In re College Book Rental Company, LLC (Case No. 12-09130-MH3-11) (the "Bankruptcy Case") confirming Assignor's authority to, among other things, effect the transactions contemplated by the Asset Purchase Agreement dated _____, 2013 (the "Agreement"), by and between Assignee and Assignor.

B.      This Assignment and Assumption Agreement is being entered into to effect the transactions contemplated by the Purchase Agreement and is delivered pursuant to Section _____ of the Purchase Agreement.

## AGREEMENT

In consideration of the agreements and covenants contained in the Purchase Agreement and this Assignment and Assumption Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee, intending to be legally bound, agree as follows:

1.      Definitions.  All capitalized terms not otherwise defined herein shall have the respective meanings set forth in the Purchase Agreement.

2.      Assignment. Pursuant to the Purchase Agreement, Assignor hereby assigns, sells, transfers and sets over (the "Assignment") to Assignee all of Assignor's right, title, benefit, privileges and interest in and to the Purchased Assets that may not be transferred in the Bill of Sale (as defined in the Purchase Agreement), including without limitation the Purchased Contracts, including, without limitation those contracts set forth in Exhibit A attached hereto and incorporated herein by reference.

3.      Assumption.  Pursuant to the Purchase Agreement, Assignee hereby accepts the foregoing assignment and assumes and agrees to discharge the Assumed Liabilities (as defined in the Purchase Agreement).

4.	No Other Liabilities Assumed.  Notwithstanding anything in this Assignment and Assumption Agreement to the contrary, Assignee shall not assume, and in no event shall be deemed to have assumed, any Excluded Liabilities, and Assignee and Assignor agree that all such Excluded Liabilities shall remain the sole responsibility of Assignor and shall be retained, paid, performed and discharged solely by Assignor.

5.	Terms of the Agreement.  The terms of the Purchase Agreement are incorporated herein by this reference.  Assignor and Assignee acknowledge and agree that the representations, warranties, covenants, agreements and indemnities contained in the Purchase Agreement shall not be superseded but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

6.	Further Action. Each of the parties covenants and agrees, at its own expense, to execute and deliver, at the request of the other party, such further instruments of transfer and assignment and to take such other action as such other party may reasonably request to more effectively consummate the assignments and assumptions contemplated by this Assignment and Assumption Agreement.

7.	Binding Effect.  This Assignment and Assumption Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns

8.	Counterparts.  This Assignment and Assumption Agreement may be executed in one or more counterparts (including by means of facsimile or e-mail signature pages) and all such counterparts taken together shall constitute one and the same agreement.

9.	Governing Law.  This Assignment and Assumption Agreement shall be governed by and construed according to the laws of the State of Tennessee, without regard to or application of its conflict of laws rules.

SELLER:

**COLLEGE BOOK RENTAL COMPANY, LLC**
By: _____
Name: Robert H. Waldschmidt
Title: Chapter 11 Trustee

PURCHASER:

**CBR FUNDING, LLC**
By: _____
Name: _____
Title: _____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

IN RE:                              )
                                    )
**COLLEGE BOOK RENTAL**             )        Case No. **12-09130-MH3-11**
**COMPANY, LLC**                    )
                                    )
            Debtor                  )

## BIDDING PROCEDURES

     Set forth below are the bidding procedures (the "**Bidding Procedures**") that have been approved by the United States Bankruptcy Court for the Middle District of Tennessee (the "**Court**") pursuant to that certain Order dated April 30, 2013 (the "**Sale Procedures Order**") and which shall govern the bid procedures for the sale of those assets identified in the proposed Asset Purchase Agreement (the "**Purchase Agreement**") between the Trustee on behalf of the Debtor's estate, as seller, by and through the Trustee, and CBR Funding, LLC ("**Purchaser**") as purchaser, and defined as the "**Purchased Assets**" and the transactions contemplated by the Purchase Agreement.  All terms not otherwise defined herein shall have the meaning given to them in the Purchase Agreement.

    I.       **Assets to Be Sold and Liabilities to be Assumed**

     The assets to be offered for sale consists of those identified in the Purchase Agreement as the "**Purchased Assets**" and are listed in Section 1.1 of the Purchase Agreement. The Purchased Assets shall include essentially all of the assets of the Debtor, including inventories (except any international books which cannot be rented or sold), accounts, accounts receivable, furnishings and equipment, including computer hardware and software, trade names, domain names, related website/software rights and cash in the Trustee's bank accounts on the closing date of the sale (excluding funds and books set aside as Excluded Assets). Refer to the Purchase Agreement for more detailed description of said Purchased Assets.

     The liabilities to be assumed as part of the sale consists of those identified in the Purchase Agreement and as the "**Assumed Liabilities**" and are listed in Section 1.3 of the Purchase Agreement. The Assumed Liabilities shall include liabilities and Cure Amounts due under each Purchased Contracts, post-petition business liabilities of the Debtor incurred in the ordinary course of business after January 1, 2013, which remain unpaid as of the closing date, taxes incurred post-petition by the Debtor, transfer taxes payable in connection with the sale and liabilities arising out of, relating to, in respect of, or in connection with the use, ownership or sale of the Purchased Assets after the closing of the sale. Refer to the Purchase Agreement for more detailed description of said Assumed Liabilities.

## II.        Excluded Assets and Excluded Liabilities

The assets to be excluded from the sale consist of those identified in the Purchase Agreement as the "**Excluded Assets**" and are listed in Section 1.2 of the Purchase Agreement. The Excluded Assets shall include, among other things, (1) international books which cannot be rented or sold; (2) funds set aside weekly in the administrative expense account; (3) $873,167.00 set aside for payment to Baker & Taylor, Inc. ("B&T") relating to the B&T First Priority Secured Claim (4) an additional $100,000 transferred into the administrative expense account; (5) all avoidance actions of the bankruptcy estate, including rights of action under 11 U.S.C. §§542, 544, 547, 548, 549, 550, and 553; and (6) all claims and causes of action of every kind and nature whether under the Bankruptcy Code, state law or otherwise, against B&T and/or any of its affiliates. Refer to the Purchase Agreement for more detailed description of the Excluded Assets.

The liabilities to be excluded from the sale consist of those identified in the Purchase Agreement as the "**Excluded Liabilities**" and are listed in Section 1.4 of the Purchase Agreement. The Excluded Liabilities shall include all liabilities other than Assumed Liabilities. Refer to the Purchase Agreement for more detailed description of the Excluded Liabilities.

## III.        Competing Bids Requirements & Consideration of Same

Any person or entity that wishes to make a competing bid (each such bid, a "**Competing Bid**") must provide the Trustee with evidence of financial wherewithal and ability to consummate the sale including the ability to fund a cash closing price equal to any amount that the potential bidder may bid with a minimum bid of $4,600,000 (which may include assumed ordinary course business payables of up to $400,000). (Purchaser has already offered $4,500,000 as an opening bid subject to the terms and conditions of the Purchase Agreement.) Debtor's secured lenders may submit a credit bid as part of its Competing Bid (if any); provided that the secured claim of such secured lender is a non-disputed claim. In the absence of any Competing Bid, the Trustee will proceed to the Sale Hearing without the need for Auction or of a deposit from Purchaser.

The Trustee shall only entertain bids that include a minimum bid of $4,600,000 and are on substantially the same terms and conditions as those set forth in the Purchase Agreement and include a clean and duly executed asset purchase agreement, blacklined to show any changes from the Purchase Agreement (the "**Modified Purchase Agreement**"), clearly setting forth any conditions for closing and stating that the bid is irrevocable through the conclusion of the Sale Hearing, provided that if such bid is accepted as the Successful Bid or the Backup Bid, such bid shall continue to remain irrevocable subject to the terms and conditions of the Bidding Procedures, throughout the closing of the sale. All bids must also include identification of any executory contracts or unexpired leases to be assumed and assigned and a statement that no further due diligence or contingencies to such offer exist. All bids must also be accompanied by a cash deposit (or acceptable letter of credit) in an amount of $400,000 (the "**Earnest Money Deposit**"). Upon the closing of the sale, the Earnest Money Deposit is to be applied toward the purchase price, in accordance with the terms of the related purchase agreement, if the Trustee accepts the Competing Bid as the Successful Bid at the conclusion of the Auction and the sale of the Purchased Assets to such entity is approved by the Court. If a

bidder is not the Successful Bidder, each Earnest Money Deposit will be returned to the applicable bidder as soon as reasonably practicable unless such bidder's bid was chosen as the Backup Bid by the Trustee (see below). All bids for the purchase of the Purchased Assets shall be subject to approval of the Court. Purchaser will provide a cash deposit or acceptable letter of credit within one (1) business day after the Bid Deadline to fulfill the Earnest Money Deposit requirement in the event that the Trustee receives any Competing Bid meeting the foregoing qualifications by the Bid Deadline.

## IV.    Access to Due Diligence Materials

Any potential bidder who desires further cash flow information or inventory information may contact the Trustee in writing, who will provide such information to any potential bidder, so that they can evaluate whether to make a Competing Bid. Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline.

## V.    Bid Deadline

Any Competing Bids must be served upon and actually received by the Trustee no later than 4:00 p.m. (prevailing Central time) on **May 28, 2013** (the "**Bid Deadline**"). Bids should be sent to Robert H. Waldschmidt, 7003 Chadwick Drive, Suite 211, P.O. Box 2828, Brentwood, Tennessee 37024-2828. Parties not submitting Competing Bids by the Bid Deadline in accordance with these Bidding Procedures may not participate at the Auction.

## VI.    The Auction

In the event that one or more Competing Bids (other than the Purchase Agreement submitted by the Purchaser) are received by the Bid Deadline, the Trustee will conduct an auction (the "**Auction**") to determine the highest or best bid for the assets beginning at **10:00 a.m. on June 3, 2013** at the Trustee's Office located at 7003 Chadwick Drive, Suite 211, Brentwood, Tennessee. At the start of the Auction, the Trustee shall describe the terms of the highest and best Competing Bid received prior to the Bid Deadline (the "**Auction Baseline Bid**").

Overbids. An "**Overbid**" is any bid made at the Auction subsequent to the Trustee's announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a bidder must comply with the following conditions:

(a) *Minimum Overbid Requirements.* An Overbid after the Auction Baseline Bid shall be made in an initial minimum increment of $100,000 and minimum Overbid increments of not less than $100,000. Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include cash and/or noncash consideration. Throughout the sale process Purchaser shall have the right to credit bid up to $8,161,203 (any credit bid of Purchaser, in addition to the $400,000 being applied to assumed liabilities, results in a total potential bid of $8,561,203 (the "**Potential High Credit Bid**"). The difference in any bids by Purchaser at

the Auction higher than the Potential High Credit Bid described above must be paid in cash.

(b) *Additional Terms*. An Overbid must remain open and binding on such bidder until and unless the Trustee accepts a higher Overbid. To the extent not previously provided, a bidder submitting an Overbid (other than Purchaser) must submit as part of its Overbid, written evidence demonstrating such bidder's ability to close all proposed transactions contemplated in and proposed by such Overbid.

(c) *Announcing Overbids.* Trustee shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each Overbid and the resulting benefit to the Debtor's estate.

## VII.        Selection of the Successful Bid and Backup Bid.

At the conclusion of the Auction, and subject to Court approval following the Auction, the successful bid shall be selected and announced by the Trustee (the "**Successful Bid**") and the backup bid shall be selected and announced by the Trustee (the "**Backup Bid**"). Within 24 hours of completion of the Auction, the entity that made the Successful Bid (the "**Successful Bidder**") and the entity that made the Backup Bid (the "**Backup Bidder**") shall complete and sign all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid and Backup Bid were made. If no Competing Bids are made for the Purchased Assets, the Purchaser shall be deemed the Successful Bidder with respect to the Purchased Assets and the Trustee shall seek Court approval of the Purchase Agreement without offering the Purchased Assets for sale at the Auction. Within 24 hours after conclusion of the Auction, the Trustee shall file a notice identifying the Successful Bidder with the Court.

## VIII.        Adjournment of the Auction.

The Auction may be adjourned or cancelled as the Trustee deems appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction or cancellation shall be given to all participants.

## IX.        Backup Bids

If the Successful Bidder fails to consummate the sale by June 30, 2013, breaches the applicable asset purchase agreement, or otherwise fails to perform, the Trustee may consummate the sale with the Backup Bidder without the need for further Court approval. Nothing herein shall be a waiver by the Trustee of his rights to keep the Earnest Money Deposit if the Successful Bidder fails to close by June 30, 2013. Any Backup Bid taken by the Trustee shall remain binding on such bidder until the earlier of June 30, 2013 or closing of the sale by the Successful Bidder. The Earnest Money Deposit of the Backup Bid shall remain held by the Trustee.

## X.        Sale Hearing

The Court has scheduled a hearing to approve the sale (the "**Sale Hearing**") on June 11, 2013, at 9:00 a.m. (Prevailing Central Time). At the Sale Hearing, the Trustee will request that the Court enter an order (the "**Sale Order**"): (1) approving (a) the Successful Bid, (b) the applicable asset purchase agreement, and (c) the proposed assumption and assignment of any Purchased Contracts, and (2) authorizing the Trustee to consummate the proposed transactions. At the Sale Hearing, the Court shall also determine any Cure Amount required if a Cure Amount Objection was timely filed.

## XI.        Closing

Closing of the sale shall take place within twenty (15) days after the entry of the Sale Order, but in no event later than June 30, 2013, and shall be only upon such order becoming a final, non-appealable order, except upon the waiver of this prerequisite (of a final order) by any purchaser of the Purchased Assets.

## XII.        "As Is, Where Is"

The proposed transfer of any of the Purchased Assets will be on an "as is, where is" basis and without representation or warranties of any kind, nature or description by the Trustee, its agents, or estates, except to the extent set forth in the applicable asset purchase agreement of the Successful Bidder as accepted by the Trustee and approved by the Court. Except as otherwise provided in an applicable asset purchase agreement, all of the Debtor's rights, title and interest in and to the Purchased Assets will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges or encumbrance, as set forth in the applicable asset purchase agreement, will attach to the net proceeds of the sale of the particular assets.

Each bidder for the Purchased Assets will be deemed to acknowledge and represent that it (a) has had an opportunity to conduct such due diligence regarding the Purchased Assets prior to making its bid, (b) has relied solely upon its own independent review, investigation and/or inspection of any document, including without limitation, executory contracts and unexpired leases in making its bid and (c) did not rely upon or review any written or oral statements, representatives, promises, warranties or guaranties whatsoever, whether express, implied by operation of law, or otherwise with respect to the Purchased Assets, or the completeness of any information provided in connection with the sale or Auction, expect as expressly stated in the particular asset purchase agreement.

\*\*\*\*\*\*\*\*\*\*\*\*

Exhibit C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **COLLEGE BOOK RENTAL** | ) | Case No. **12-09130-MH3-11** |
| **COMPANY, LLC** | ) | |
| | ) | |
| Debtor | ) | |

## NOTICE OF BIDDING PROCEDURES, AUCTION AND SALE APPROVAL HEARING

PLEASE TAKE NOTICE that on October 4, 2012, an involuntary petition was filed against College Book Rental Company, LLC (the "Debtor") under Chapter 11 of Title 11, U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court"), Case No. 12-09130-MH3-11 (the "Bankruptcy Case"). An Agreed Order for Relief was entered on October 15, 2012 (the "Petition Date") and pursuant to an order of the Bankruptcy Court entered on October 19, 2012, Robert H. Waldschmidt was appointed as the Debtor's chapter 11 trustee (the "Trustee").

PLEASE TAKE FURTHER NOTICE that, the Trustee, on behalf of the Debtor's estate, and CBR Funding, LLC ("Purchaser") are parties to a certain proposed Asset Purchase Agreement (the "Purchase Agreement"), which governs the sale (the "Sale") of substantially all of the Debtor's assets (the "Assets").

PLEASE TAKE FURTHER NOTICE that on January 31, 2013, the Trustee filed a motion (the "Motion") for (i) entry of an order (a) authorizing bidding procedures (the "Bidding Procedures") and notice of the auction relating thereto, (b) scheduling a hearing to consider sale substantially all of the Debtor's assets (the "Sale Hearing"), (c) entry of an order (a) authorizing and approving the sale of the Debtor's assets free and clear of liens, claims, encumbrances, and interests, (b) authorizing and approving the asset purchase agreement with respect thereto, (c) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases as necessary in connection with the sale, and (d) granting related relief (the "Motion") with the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that the Trustee is soliciting offers for the purchase of the Assets consistent with the Bidding Procedures (the "**Bidding Procedures**"), which were approved by the Bankruptcy Court by entry of an order dated April 30, 2013 (the "Sale Procedures Order") [Docket No,. ___], attached hereto. *All interested bidders should carefully read the Bidding Procedures and the Sale Procedures Order.* To the extent that there are any inconsistencies between this notice and the Bidding Procedures, the Bidding Procedures shall govern.

PLEASE TAKE FURTHER NOTICE that, if the Trustee receives a competing bid accordance with the terms of the Bidding Procedures, the Trustee shall conduct an Auction of the Assets **on June 3, 2013** at **10:00 a.m. (prevailing Central time)** at the offices of the Trustee located at 7003 Chadwick Drive, Suite 211, Brentwood, Tennessee, or during such later time or at such other place as the Trustee shall determine in accordance with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider, among other things, the approval of the sale of the Purchased Assets to the Purchaser, or other Successful Bidder determined at Auction to have submitted the highest or otherwise best bid for the Assets,

will be held on **June 11, 2013 at 9:00 a.m. (prevailing Central time)** at Courtroom Three, U.S. Customs House, Nashville, Tennessee, or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Motion, the Trustee shall seek approval at the Sale Hearing, of, among other things, the sale of the Purchased Assets free and clear all liens, claims, encumbrances, and other interests pursuant to section 363 of the Bankruptcy Code, and to assume and assign certain unexpired leases and executor contracts to the Purchaser or other Successful Bidder pursuant to section 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the sale relief requested in the Motion must: (a) be in writing; (b) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (c) comply with the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Middle District of Tennessee, and any orders of the Bankruptcy Court; and (d) be filed with the Bankruptcy Court and served upon the Trustee, at the address below, so as to be **actually received** by **4:00 p.m. prevailing Central Time on June 7, 2013**, (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the full terms and conditions of the Sale Procedures Order, which shall control in the event of any conflict. A copy of the Motion, the Bidding Procedures and the Sale Procedures Order and Purchase Agreement may be obtained (a) via PACER or (b) by request made to Trustee at the address below.

<u>**Consequences of Failing to Timely File and Serve an Objection to the Sale**</u>

**ANY PARTY OR ENTITY THAT FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE SALE PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS AFFECTED THEREUNDER, AND THE ASSUMPTION AND ASSIGNMENT OF THE LEASES AND CONTRACTS TO THE PURCHASER OR SUCCESSFUL BIDDER AND ANY CURE AMOUNTS RELATED THERETO. THE TRUSTEE ENCOURAGES ALL PARTIES TO CAREFULLY REVIEW THE BIDDING PROCEDURES ATTACHED TO THE SALE PROCEDURES ORDER, AS WELL AS ALL TERMS AND CONDITIONS OF THE MOTION, THE PURCHASE AGREEMENT AND THE SALE PROCEDURES ORDER.**

DATED: _____

/s/ Robert H. Waldschmidt
ROBERT H. WALDSCHMIDT (#4657)
Attorney for Trustee
7003 Chadwick Drive, Suite 211
P.O. Box 2828
Brentwood, TN 37024-2828
615/468-1020    Fax: 615-259-2179
rhw@rhwlawoffice.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **COLLEGE BOOK RENTAL** | ) | Case No. **12-09130-MH3-11** |
| **COMPANY, LLC** | ) | |
| | ) | |
| Debtor | ) | |

### NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN UNEXPECTED NON-RESIDENTIAL REAL PROPERTY LEASES AND EXECUTORY CONTRACTS

**PLEASE TAKE NOTICE** that on January 31, 2013, the Chapter 11 Trustee (the "Trustee") for College Book Rental Company, LLC (the "**Debtor**") filed a "Motion (1) To Approve Procedures for the Sale of Certain Assets of the Bankruptcy Estate, Free and Clear of all Liens, Claims, Encumbrances, and other Interests, (2) Authorizing the Assumption, Assignment, and Sale of Certain Executory Contracts and Unexpired Leased, (3) Rejecting Certain Executory Contracts and Unexpired Leases and (4) Granting Related Relief" which was supplemented on April 15, 2013, by the filing of the "Supplement to Trustee's Motion to Approve Sale Procedures for the Sale of Certain Assets and Motion to Continue Hearing to Approve Sale Procedures and to Set Hearing to Approve the Sale of Certain Assets of the Debtor Free and Clear of All Liens, Claims, Encumbrances and Other Interests" (collectively, the "**Motion**"), seeking, among other things, the entry of (i) an order (the "**Sale Procedures Order**") (a) authorizing and approving certain bidding procedures (the "**Bidding Procedures**"), (b) approving the manner and form of notice of the auction for the sale of certain Purchased Assets, (c) establishing procedures related to the assumption and assignment of certain executory contracts and unexpired leases, including notice of proposed cure amounts, and (d) scheduling a hearing to consider the sale of the Purchased Assets, and (ii) entry of an order (a) authorizing and approving the sale of the Purchased Assets, (b) authorizing and approving the asset purchase agreement with respect thereto, (c) authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases as necessary in connection with the sale, and (d) granting related relief January 31, 2013, with the United States Bankruptcy Court for the Middle District of Tennessee (the "**Bankruptcy Court**").

**PLEASE TAKE FURTHER NOTICE** that an order approving the Motion (the "**Sale Procedures Order**") was entered on April 30, 2013 [Docket No._____].

**PLEASE TAKE FURTHER NOTICE** that in connection with the Sale Procedures Order, the Bankruptcy Court scheduled a hearing to consider the sale of certain Purchased Assets for **June 11, 2013 at 10:00 a.m. (prevailing Central Time)** (the "**Sale Hearing**").

**PLEASE TAKE FURTHER NOTICE** that you have been identified as a party to an unexpired lease or executory contract (collectively referred to as the "**Leases and Contracts**")

that the Debtor **may** seek to assume and assign. (each, a "Potential Assumed Lease or Contract" and collectively, the "Potential Assumed Leases and Contracts").

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Motion, the Trustee may assume and assign certain of their Leases and Contracts free and clear of all liens, claims, charges, encumbrances, and interests upon payment of the cure amounts required under Section 365(b)(1)(A) of the Bankruptcy Code (the "**Cure Amounts**").

**PLEASE TAKE FURTHER NOTICE** the Potential Assumed Leases and Contracts that the Trustee may seek to assume, sell or assign are listed on the attached **Exhibit A.** The Trustee has asserted that there is no arrearage due to any of the parties identified in Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that any objections to the assumption and assignment of the Potential Assumed Contracts and the corresponding Cure Amounts, must be (a) in writing, (b) comply with the Federal Rules of Bankruptcy Procedures and the Local Bankruptcy Rules, (c) be filed with the clerk of the Bankruptcy Court for the Middle District of Tennessee, 701 Broadway, Nashville, Tennessee, **on or before June 7, 2013, at 4:00 p.m. (prevailing Central Time)** (the "**Cure Objection Deadline**") and (d) be served so as to be received **no later than 4:00 p.m. on the same day**, upon the Trustee.

**PLEASE TAKE FURTHER NOTICE** that any person or entity receiving notice of the Sale Hearing and this notice that fails to file an objection on a timely basis shall (k) be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other monetary obligations and amounts with respect to such unexpired lease or executory contract and the Debtor shall be entitled to rely solely upon the Cure Amount; and (ii) be forever barred and estopped from asserting or claiming against the Debtor or the Successful Bidder or any other assignee of the relevant designated contract or lease that any additional amounts are due or defaults, claims or damages exist under such designated contract or lease.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing may be adjourned from time to time without further notice to creditors or parties-in-interest other than by announcement of said adjournment in the Bankruptcy Court or on the Bankruptcy Court's calendar on the date scheduled for the Sale Hearing.

**DATED:** _____

/s/ Robert H. Waldschmidt
ROBERT H. WALDSCHMIDT (#4657)
Attorney for Trustee
7003 Chadwick Drive, Suite 211
P.O. Box 2828
Brentwood, TN 37024-2828
615/468-1020     Fax: 615-259-2179
rhw@rhwlawoffice.com

This Order has Been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.